**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **NICOLETTE CREMEANS**, *et al.*, | : |
| | : |
| **Plaintiffs,** | : |
| | : Case No. 2:19-CV-2703 |
| **v.** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| **SAMANTHA TACZAK**, *et al.*, | : |
| | : **Magistrate Judge Deavers** |
| **Defendants.** | : |

## OPINION & ORDER

This matter is before the Court on Plaintiffs, Nicolette Cremeans's and James Cremeans's, Motion for a Preliminary Injunction. (ECF No. 2). Plaintiffs James and Nicolette Cremeans allege that the Chillicothe Police Department has violated their constitutional rights by failing to institute in a timely manner forfeiture proceedings or return property seized approximately twenty months ago. The Cremeans seek an order declaring the actions of the Chillicothe Police Department unconstitutional and the return of property seized during the execution of a search warrant on January 10, 2018. For the reasons set forth below, the Cremeans' Motion is hereby **GRANTED**.

## I.     BACKGROUND

### A.     Factual Background

On January 10, 2018, Chillicothe police officers executed a search warrant at Plaintiffs' residence and an additional property that they were in the process of purchasing. (ECF No. 1 at 3–4). The search warrant related mostly to suspected drug crimes but authorized searching for broad categories of items. (ECF No. 1 at 5). While officers did not find any drugs, they did seize approximately $33,715 in cash and the following items:

> one jar of quarters and rolled change, lease agreements, an old rare coin
> collection, bank statements and other financial documents, car and motorcycle
> titles, a cell phone, thumb drives, a camera, a hard drive, sim cards, financial
> documents, car keys, passports[,] and other property.

(ECF No. 1 at 3).

That same day, the Cremeans allege they were both arrested and detained while the searches were conducted. Mr. Cremeans was stopped for a traffic violation, and officers seized his cell phone and $1,080 in cash from his person. (ECF No. 1 at 3). Mrs. Cremeans was also taken into custody, and officers seized her cell phone and $715 that she was carrying. (ECF No. 1 at 4).

In September 2018, the Cremeans brought an action for replevin or, in the alternative, conversion in Ross County Court of Common Pleas. The state court judge ultimately ordered the return of the cell phone and $715 seized from Nicolette Cremeans. The judge denied replevin as to "all other requested items . . . because there is an ongoing criminal investigation." (ECF No. 9, Exh. B). Although the Entry of Judgment does not state whether the dismissal was with or without prejudice, the Ross County Court of Common Pleas amended its order nunc pro tunc on July 15, 2019, to state that the dismissal was without prejudice. (Pls.' Ex. 1).[1]

Chillicothe has outlined the timeline of the investigation as follows: (1) Officers execute the search warrant on January 10, 2018; (2) Detective Taczak subpoenas tax returns and bank records in February and March 2018; (3) Taczak receives partial response to bank subpoenas in April; (4) Taczak receives full response in June; (5) the case against the Cremeans is compiled from June to September. (ECF No. 13 at 5). Officer Taczak testified at the Preliminary Injunction hearing that she submitted the case to the Ross County Prosecutor on November 9,

---

[1] Plaintiffs submitted the recording of the state court proceedings. This Court has heard the recording of the state court proceedings on this case in their entirety.

2018.  The Ross County Prosecutor filed an indictment against James Cremeans on July 12, 2019.  (Defs.' Ex. 4).

At the time the Cremeans filed this suit on June 26, 2019, the City of Chillicothe had neither brought a formal forfeiture action nor charged the Cremeans with any crimes.  Between the time that the Cremeans filed this suit and this Court held a hearing on the Motion for Preliminary Injunction, the Ross County Prosecutor brought an indictment against Mr. Cremeans for Receiving Proceeds of an Offense Subject to Forfeiture Proceedings under Ohio Revised Code § 2927.21.  (Defs.' Ex. 4).  That indictment did not include a separate forfeiture specification, nor had state authorities initiated separate civil forfeiture proceedings.

On August 16, 2019, however, a state grand jury returned a new indictment against James Cremeans.  (ECF No. 27-1).  That indictment includes a separate forfeiture specification.  That specification reads as follows:

> SPECIFICATION: The grand jurors further find and specify that U.S. currency in the amount equal to $30,855.82 belonging to James D. Cremeans, specifically, the $1080.00 in U.S. currency seized from the person of the said James D. Cremeans, and the $29,775.82 in U.S. currency seized from the residence of the said James D. Cremeans, located at 463 Charles Street, Chillicothe, Ohio 45601 at  the time of this offense, is subject to forfeiture.

(ECF No. 27-1 at 2).

## B.    Procedural Background

The Cremeans sued the City of Chillicothe, the Chief of Police, Officer Taczak, and other unknown officers ("the Chillicothe Defendants").  The Cremeans allege that the City's failure to bring a formal forfeiture action or return their property is a violation of their due process rights under the Fourteenth Amendment.  They request that the Police Department return their property.  This Court granted in part and denied in part the Plaintiffs' Motion for a Temporary Restraining Order.  (ECF No. 11).  That Order did not require the return of the Cremeans'

property but rather instructed the Chillicothe Police Department to hold the Cremeans' property in trust and enjoined them from conducting any further tests on the property. This Court then held a Preliminary Injunction hearing on the Motion.

After the Preliminary Injunction hearing, the Cremeans moved to reopen the Preliminary Injunction hearing, alleging that perhaps the Cremeans' money had been "misappropriated." (ECF No. 21 at 2). The Cremeans have asked Defendants' counsel for a receipt showing that the Cremeans' money had been deposited. Defense counsel has not responded to that request. Additionally, the Cremeans point to the lack of any receipts, the lack of any mention of the amount of cash in the indictment or "search warrant inventory return sheet or in any court proceeding, including testimony in this Court." (ECF No. 21 at 1). The Cremeans have also submitted news articles reporting on a Ross County deputy under investigation for missing "money intended for drug informants," (ECF No. 21 at 5), and the Pike County sheriff who is under indictment (ECF No. 21 at 7).

### III. LAW AND ANALYSIS

The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In light of its "limited purpose," a preliminary injunction is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Accordingly, a party need not prove her case in full at a preliminary injunction hearing. *Id. But see Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (noting that the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

When considering a motion for preliminary injunction, a district court must balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012). These four considerations are "factors to be balanced, not prerequisites that must be met." *Certified Restoration*, 511 F.3d at 542. Whether the combination of the factors weighs in favor of issuing injunctive relief in a particular case is left to the discretion of the district court. *See Leary*, 228 F.3d at 739. When plaintiffs allege a constitutional violation, however, "the likelihood of success on the merits often will be the determinative factor." *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)).

Defendants have moved to supplement the record with the August 16, 2019 indictment. (ECF No. 27). This indictment relates directly to Plaintiffs' arguments that the state has failed to file any forfeiture. Additionally, Plaintiffs have also filed supplemental documents and memoranda, without leave of court. Therefore, Defendants' Motion to Supplement the Record is hereby **GRANTED.** *See Phelps v. MacConnell*, No. 3:12cv00344, 2014 W 2006716, at *2 (S.D. Ohio May 16, 2014) (granting motion to supplement record where plaintiffs had made arguments regarding the documents sought to be added and "because Plaintiff has also submitted some of those [documents] into the record").

The Cremeans have moved to reopen the preliminary injunction proceedings based on the failure of the Chillicothe Defendants to provide a deposit receipt for the Cremeans' money and a speculation that the money may have been stolen. The Cremeans rest this assertion on generalized

facts from news reports of police misconduct. The Cremeans allege that one individual involved in the same task force as Officer Taczak is under investigation for stealing money that should have been given to drug informants. (ECF No. 21 at 1–2). The Chillicothe Defendants have countered that their time to respond to the Cremeans' request for the receipt has not yet expired. (ECF No. 22 at 2). Even assuming that the Cremeans' allegations are true, Preliminary injunction proceedings necessarily occur without the benefit of full discovery. These allegations, which at this point remain highly speculative, can be pursued in the normal course of discovery. To reopen the proceedings every time new information is discovered would be to short-circuit the discovery process and any briefing or full proceedings on the merits. Plaintiffs' Motion to Reopen the Preliminary Injunction Hearing is hereby **DENIED.**

### A. Likelihood of Success on the Merits

#### 1. *The Cremeans Have Standing*

Chillicothe Police Department argues that the Cremeans do not have standing because Mr. Cremeans told officers that the money they seized belonged to his uncle and grandmother. (ECF No. 13 at 6; ECF No. 13 Exh. A ¶8). *See Hayes v. Carter*, No. 96-2209, 1997 U.S. App. LEXIS 30184, at *4 (Oct. 29, 2997) (noting that one plaintiff did not have standing "because she did not provide evidence of ownership in the forfeited property.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Mr. Cremeans denies making these statements.

Even if Mr. Cremeans told officers that some of the money belonged to his grandmother and uncle, the Cremeans nevertheless have standing to assert these claims. For Article III standing to challenge a forfeiture action, "a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). A possessory interest may

suffice to establish standing. *Id.* at 498. But in relying on simple possession to establish standing, such possession "must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *Id.* Although these pronouncements were made in the context of standing to challenge a judicial forfeiture action, this Court sees no reason why these same considerations should not apply to an action seeking return of property because of a due process violation. Here, James Cremeans has testified that the rare coins collection was a gift from his mother before she died. He also testified that $7500 of the cash belonged to his wife, also a party to this suit. Mr. Cremeans explained that he has a power of attorney to take care of his uncle's finances and power of attorney to care for his grandmother. He sets aside some money to use in caring for his grandmother. These powers of attorney may explain why officers believed that some of the money did not belong to James Cremeans. Thus, the Cremeans have standing because they possessed the property at the time of the seizure.

### 2. *The Cremeans' Claims Are Not Barred by Res Judicata.*

The Cremeans brought an action in Ross County Court of Common Pleas in September 2018 for return of their property. The judge ordered the return of $715 and Mrs. Cremeans's cell phone but denied replevin as to "all other requested items . . . because there is an ongoing criminal investigation." (ECF No. 9, Exh. B). After the Cremeans filed this Motion for Preliminary Injunction, and before the hearing on the matter, the judge in the Ross County matter amended his order nunc pro tunc to state that the "matter is dismissed without prejudice." (Pls.' Ex. 1). Chillicothe Police Department argues that the Cremeans' claims are barred by res

judicata because the Cremeans already sought the return of their property in state court, and the judge in Ross County entered a final judgment.

A federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Hospital Underwriting Grp, Inc. v. Summit Health Ltd.*, 63 F.3d 486, 494 (6th Cir. 1995)). This Court therefore looks to Ohio law in deciding whether the Cremeans' claims are precluded. Res judicata has two components: claim preclusion and issue preclusion. Claim preclusion is broader than issue preclusion in that "[c]laim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 61 (Ohio 2007) (citing *Fort Frye Teachers Assn, OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (Ohio 1998)). Issue preclusion bars "relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *Id.* Defendants have made their argument based on claim preclusion, arguing that these claims should have been brought in state court. (ECF No. 9 at 4).

> Under Ohio law, claim preclusion applies if four requirements are met:
> (1) a prior final, valid decision on the merits by a court of competent jurisdiction;
> (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood*, 127 F.3d at 493. Plaintiffs argue that the first, third, and fourth requirements are not satisfied here.

Whether a dismissal order constitutes an adjudication on the merits depends on whether the dismissal was with prejudice or without prejudice. Generally, "[a] dismissal with prejudice

operates as an adjudication on the merits." *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 171 (Ohio 2008). But, when a case is dismissed "otherwise than on the merits," the dismissal "should be without prejudice." *Id.* A dismissal without prejudice has no res judicata effect. *See Goudlock v. Voorhies*, 119 Ohio St.3d 398, 400 (Ohio 2008). The Ross County judge amended his order to state that the case was dismissed without prejudice. Thus, the Ross County judgment has no res judicata effect, and the Cremeans' claims are not precluded.

### 3. *Due Process Claim*

The Cremeans allege that Chillicothe's failure to institute forfeiture proceedings for the approximately twenty months in which Chillicothe has possessed their property is a violation of their due process rights cognizable under § 1983. In *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, the United States Supreme Court held that a significant delay in bringing a forfeiture proceeding can rise to the level of a due process violation under the Fifth Amendment. *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983). The Fifth Amendment Due Process Clause has been "incorporated into the Fourteenth," *Ingraham v. Wright*, 430 U.S. 651, 672 (1977), and generally due process interests under the Fifth Amendment are likewise protected under the Fourteenth. *See, e.g.*, *Arnett v. Kennedy*, 416 U.S. 134, 154 (1974) (referring to cases interpreting the Due Process Clause of the Fourteenth Amendment as applicable to due process claims under the Fifth Amendment); *Southwestern Oil Co. v. State of Tex.*, 217 U.S. 114, 119 (1910) (noting that, by the Fourteenth Amendment, "the states became bound, as was the United States by the 5th Amendment, not to deprive any person of property without due process of law"); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 n.11 (1972) (referencing the Supreme Court's decision under the Fifth Amendment in *Bolling v. Sharpe*, 347 U.S. 497,

499 (1954), as informing due process required for deprivations of liberty under the Fourteenth Amendment).

Defendants have argued that the Cremeans are required to show that Ohio does not provide an adequate remedy for the alleged due process violation before bringing a claim under § 1983. (ECF No. 13). The Cremeans have also addressed the inadequacy of state remedies. While the Cremeans' arguments could be read as attempting to state a facial challenge to Ohio's statutory scheme governing forfeiture proceedings, the Complaint requests only declaratory and injunctive relief specific to the Cremeans, and the Cremeans made clear at the Preliminary Injunction hearing that their theory of the case is unconstitutional delay, not unconstitutionality of the state statutory scheme. Thus, this Court will construe Plaintiffs' Motion as addressing inadequacy of state remedies before bringing a § 1983 claim.

Claims against a state for violation of due process are governed by the Fourteenth Amendment. The availability of state remedies is irrelevant for two categories of due process claims: (1) those claims alleging violations of "specific protections defined in the Bill of Rights," such as unlawful search and seizure, and (2) claims for violations of substantive due process, that is to say, "wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). But the availability of state remedies does bear on procedural due process claims. *Zinermon*, 494 U.S. at 125. A procedural due process claim does not allege that "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is . . . itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* For such a procedural due process claim, the harm "is not complete unless and until the State fails to provide due process." *Id.* at 126.

Whether Plaintiffs are required to first show inadequacy of state post-deprivation remedies depends upon whether the alleged violation of due process occurred under "established state procedures" or through "a random or unauthorized act." *Mitchell v. Fankhauser*, 375 F.3d 477, 483–84 (6th Cir. 2004). Under the rule of *Parratt v. Taylor*, 451 U.S. 527 (1981), extended by *Hudson v. Palmer*, 468 U.S. 517 (1984), "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Hudson*, 468 U.S. at 532 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)). The *Parratt* rule is premised on the logic "that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson*, 468 U.S. at 533.

The Sixth Circuit has, until recently, followed "two parallel but contradictory lines of authority" on when plaintiffs must show inadequacy of state remedies before bringing a claim for a violation of due process. *Mitchell v. Fankhauser*, 375 F.3d 477, 482 (6th Cir. 2004). But in *Mitchell v. Fankhauser*, the Sixth Circuit clarified that the correct approach was that taken in *Watts v. Burkhart* and similar cases. *Mitchell v. Fankhauser*, 375 F.3d 477, 484 (6th Cir. 2004). *Watts* held that *Parratt* did not apply "when faced with a case alleging a deprivation of property resulting from application of an established state process." *Watts v. Burkhart*, 854 F.2d 839, 843 (6th Cir. 1988) (citing *Spruytte v. Walters*, 753 F.2d 498, 509–10 (6th Cir. 1985)).

The alleged due process violation here occurred as a result of established state process. The Cremeans have argued that Ohio does not provide an adequate remedy because Ohio law does not provide a timeframe in which the state is required to bring a forfeiture action. Thus, the Chillicothe Police Department's and Ross County prosecutor's actions were not random or

unauthorized, and *Parratt* does not apply. *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 650 (6th Cir. 2013) (finding that plaintiffs were not required to show inadequacy of state remedies where the claims giving rise to the alleged due process claim arose from conduct that defendants believed was justified under the parties' CBA). The underlying logic of the *Parratt* rule supports this conclusion. *Parratt* excuses pre-deprivation remedies where such "remedies are impossible." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Here, however, Ohio has the opportunity to provide plaintiffs like the Cremeans with adequate process—a forfeiture proceeding. Thus, the Cremeans are not required to show inadequacy of state procedure before bringing their § 1983 claim for violation of due process.

One other threshold matter merits addressing: the Chillicothe Defendants have argued that this Court is without authority to question whether the indictment includes language sufficient to request forfeiture because "[t]he sufficiency of this Indictment, in seeking a forfeiture, is the sole province of the State Court," (ECF No. 22 at 1) and that the Federal Anti-Injunction Act, 28 U.S.C. § 2283, bars this Court from enjoining criminal forfeiture proceedings. (ECF No. 22 at 1–2).

The Federal Anti-Injunction Act does not bar § 1983 actions. The Federal Anti-Injunction Act prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. A request for injunctive relief under § 1983 is an "expressly authorized" exception to the Anti-Injunction Act. *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972).

The mere presence of an indictment in state court does not deprive this Court of authority to examine the contents of an indictment for purposes of ruling on a federal constitutional claim.

Chillicothe cites no case for the proposition that this Court cannot opine on the sufficiency of the indictment's forfeiture request, or lack thereof. Whether the indictment seeks forfeiture is relevant to the question of unconstitutional delay. A state cannot prevent inquiry into the constitutionality of its actions merely by alleging that a question involves interpretation of state law.

Although the state has now obtained a second indictment, the Chillicothe Defendants continue to assert that the first indictment contained a forfeiture request. Not so. The first indictment charged Mr. Cremeans under Ohio Revised Code § 2927.21 for "receiving proceeds of an offense subject to forfeiture proceedings" for trafficking in cocaine. The Ohio Revised Code distinguishes between direct drug trafficking offenses and receiving proceeds of a drug trafficking offense. Trafficking in cocaine is an offense under § 2925.03. Section 2927.21 makes it an offense to "receive, retain, possess, or dispose of proceeds knowing or having reasonable cause to believe that the proceeds were derived from the commission of an offense subject to forfeiture proceedings." O.R.C. § 2927.21(B). One such offense is an offense under § 2925.03. Section 2927.21 proceeds to delineate varying degrees of felony charges based on the amount of money involved.

The first indictment did not request forfeiture. Because the state has not sought civil forfeiture through a separate civil complaint, only criminal forfeiture is relevant. Section 2981.04 of the Ohio Revised Code sets out the process for criminal forfeiture. Section 2981.04 "distinguishes between the underlying criminal offense and the forfeiture specification." *State v. Harris*, 132 Ohio St. 3d 318, 2012-Ohio-1908, 972 N.E.2d 509, at ¶ 26. Under § 2981.04, a request for forfeiture must contain the following information.

> (a) The nature and extent of the alleged offender's or delinquent child's interest in the property;

(b) A description of the property;
(c) If the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.

ORC § 2981.04(A)(1)(a–c). Section 2981.04 also requires the forfeiture specification as set out in § 2941.1417.

Ohio appellate courts strictly adhere to the statutory requirements for requesting forfeiture. *See, e.g*, *State v. Cave*, 4th Dist. Scioto No. 13CA3575, 2015-Ohio-2233, at ¶ 40 ("Forfeitures are not favored in law and equity, and forfeiture statutes must be interpreted strictly against the [S]tate.") (internal citations omitted). Where an indictment contains no forfeiture specification, a trial court is without power to order forfeiture of the property. *See, e.g.*, *State v. Linville*, 8th Dist. Cuyahoga No. 104359, 2017 WL 123048, at ¶ 14 (reversing trial court's grant of order ordering return of a vehicle where indictment did not include forfeiture specification). The first indictment against Mr. Cremeans contained no forfeiture specification. The only mention of forfeiture in the indictment is in reference to the name of the offense. Mere passing references to forfeiture do not meet Ohio's statutory requirements for criminal forfeiture. Here, until August 16, 2019 the state had not attempted to include any forfeiture specification, let alone one that could arguably be called insufficient. After this court's preliminary injunction hearing, the state brought an indictment including a forfeiture specification. That forfeiture specification includes a description of most (but not all) of the cash proceeds that were taken from the Cremeans, and none of the other items that were seized. One Ohio Court of Appeals seriously doubted the sufficiency of a forfeiture specification that included all relevant information except for "the nature and extent of the alleged offender's interest in the property" and "the alleged use or intended use of the property in the commission or facilitation of the offense," even though that

Court ultimately found the plaintiff to have waived such objections. *State v. Schmidt*, 3d Dist. Seneca No. 13–13–07, 2014-Ohio-758.

Nevertheless, Defendants have raised questions of the appropriateness of federal action in a case where state criminal charges are now pending. This raises questions of abstention, an issue this Court may raise *sua sponte*. *See Bellotti v. Baird*, 428 U.S. 132, 144 n.10 (1976); *Hill v. Snyder*, 878 F.3d 193, n.3 (6th Cir. 2017). Although a state can waive *Younger* abstention, typically the state must affirmatively urge the court to decide the constitutional question before a waiver results. *See O'Neill v. Coughlan*, 511 F.3d 638, 641–43 (6th Cir. 2008). *Younger v. Harris* counsels that "a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008). The principles underlying *Younger v. Harris* abstention apply even when state criminal proceedings are instituted after a federal case, as was done here. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975). But federal courts are not required to abstain once they have undertaken "proceedings of substance on the merits." *Id.* A case "in which a preliminary injunction is granted has proceeded well beyond the 'embryonic stage,' and considerations of economy, equity, and federalism counsel against Younger abstention at that point." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238 (1984).

*Younger* abstention is applicable where three requirements are met: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill*, 511 F.3d at 643 (quoting *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)). *Younger* does not apply "where the state proceeding is pursued with an intent to harass, is conducted in bad faith, or where the challenged

state statute or authority is flagrantly and patently unconstitutional." *Watts v. Burkhart*, 854 F.2d 839, 844 (6th Cir. 1988) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–13 (1975)).

A case "in which a preliminary injunction is granted has proceeded well beyond the 'embryonic stage,' and considerations of economy, equity, and federalism counsel against *Younger* abstention at that point." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975)). Although some courts have found that state criminal proceedings can be said to have commenced before an indictment, *see Sovereign News Co. v. Falke*, 448 F.Supp. 306, 338 (N.D. Ohio 1977), the filing of an indictment is sufficient, if not necessary. At the time this suit was filed, no state criminal proceedings were pending. The state issued an indictment against James Cremeans just prior to the preliminary injunction proceedings, but that indictment contained no forfeiture specification. The most recent indictment containing the forfeiture specification was not returned until after this Court concluded the Preliminary Injunction hearing.

The Ninth and Eleventh circuits have noted that a "district court's extended evidentiary hearing on the question of a preliminary injunction constituted a substantive proceeding on the merits." *Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350–51 (9th Cir. 1985); *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1218 (11th Cir. 2002) (finding that *Younger* abstention was inappropriate where briefing had been submitted on motion to dismiss and district court had held thorough evidentiary hearing regarding plaintiffs' motion for a temporary restraining order prior to when the plaintiff was arrested); *Nationwide Biweekly Admin., Inc. v. Owen,* 873 F.3d 716, 729 (9th Cir. 2017) (determining "significant expenditure of effort by the federal court counsels against abstaining" where district court reviewed extensive briefing and had engaged extensively with merits issues even though it had not yet conducted a

hearing or issued a decision), *cert. denied sub nom. Nationwide Biweekly Admin., Inc. v. Hubanks*, 138 S. Ct. 1698 (2018). Although this Court had not concluded the preliminary injunction proceedings at the time the state filed its first indictment, the parties and the Court had already spent significant time and resources preparing for the hearing. Additionally, the preliminary injunction hearing had taken place and this Court's decision was in process (and near completion) before the second indictment containing the forfeiture specification was filed. Therefore, this Court's proceedings at the time the second indictment was brought had progressed well beyond "the embryonic stage" and considerations of "economy, equity, and federalism" counsel against the application of *Younger* abstention on this point. *See Hawaii Housing Auth. v. Midkiff*, 467 at 238.

*Younger* also requires that the federal plaintiffs be able to raise their constitutional challenge in the state proceeding. Constitutional claims are not subject to abstention if they are "'collateral' to the state proceedings . . . . [and] could neither be proven as part of the state case-in-chief nor raised as an affirmative defense." *Habich v. City of Deaborn*, 331 F.3d 524, 532 (6th Cir. 2003). Plaintiffs have argued they have no adequate state remedy, but those arguments addressed the ability to challenge an ongoing retention of property. They did not address Ohio court's receptivity to a federal constitutional challenge. Additionally, while it is likely that James Cremeans could raise a constitutional challenge to the most recent indictment, he could not have challenged the first indictment in the criminal proceeding as it did not contain a forfeiture specification.[2] *State v. Golston*, 66 Ohio App. 3d 423, 430 (1990) (noting that during

---

[2] It should be noted that in a criminal proceeding, James Cremeans could only bring a constitutional challenge to the seizure of the cash ($30,855.82) listed in the second indictment. (ECF No. 27-1 at 2). This is because the second indictment is also insufficient and fails to list the remainder of the property (lease agreements, rare coin collection, financial documents, vehicle titles, electronics, etc) and the full amount of cash ($33,715) that was taken from the

pendency of criminal case, Golston was unable to challenge the state's seizure of his goods because no forfeiture count had been brought in case where forfeiture proceedings were not institute until 18 months after seizure and after defendant).  Accordingly, the Cremeans could not have brought this constitutional challenge in the state court proceeding, because at the time of the preliminary injunction hearing, no forfeiture specification had been brought.

Because this Court has conducted a preliminary injunction hearing on Plaintiff's constitutional due process claims and because the Plaintiffs could not have raised these claims in state court at the time of the evidentiary hearing, this Court finds that it is not required to abstain from hearing the Cremeans' claim pursuant to *Younger v. Harris*.

This Court now proceeds to the merits of the due process claim.  Claims for unconstitutional delay in bringing a forfeiture proceeding are governed by the *Barker v. Wingo* balancing test.  *$8,850 in U.S. Currency*, 461 U.S. at 564.  Under *Barker v. Wingo*, if the plaintiff can show "some delay which is presumptively prejudicial," *Barker*, 407 U.S. 514, 530 (1972), then the court engages in balancing three factors: "the reason for the delay, the claimant's assertion of his right, and the prejudice to the claimant." *Ninety Three Firearms*, 330 F.3d 414, 424–25 (6th Cir. 2003) (citing *Barker*, 407 U.S. at 530).  None of the "factors is a necessary or sufficient condition for finding an unreasonable delay." *$8,850 in U.S. Currency*, 461 U.S. at 565.  The *Barker* factors are intended to guide courts in evaluating "whether the basic due process requirement of fairness has been satisfied in a particular case." *Id.*

The Supreme Court has remarked that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v.*

---

Cremeans' home.  (ECF No. 1 at 3).  Thus, it is also likely that any challenge brought in the state criminal proceedings would not adequately address the extent of the constitutional violation. *State v. Golston*, 66 Ohio App. 3d 423, 430 (1990).

*United States*, 505 U.S. 647, 652 n.1 (1992).  The Supreme Court has found a delay of eighteen months to be "quite significant."  *$8,850 in U.S. Currency*, 461 U.S. at 566.

The length of the delay here is twenty months.  The property was seized in January 2018, and the grand jury returned an indictment with a forfeiture specification in August 2019.  A delay of twenty months is substantial and presumptively prejudicial.  This Court will proceed to balance the remaining three *Barker* factors.

### a.  Barker Factor 1: Reason for the Delay

Next, the court examines the reason for the delay.  *Barker*, 407 U.S. at 531.  A deliberate delay, such as a delay calculated "to hamper the defense should be weighted heavily against the government."  *Id.*  Justifications "such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  Id.  And, "a valid reason, such as a missing witness, should serve to justify appropriate delay."  *Id.*

The necessary time it takes to complete an investigation is a proper consideration in explaining a delay in instituting forfeiture proceedings.  As the Supreme Court noted in examining a delay in forfeiture proceedings, the "investigation required responses to inquiries to state, federal and Canadian law enforcement officers.  Such an investigation inherently is time-consuming, and there is no indication that it was not pursued with diligence."  *$8,850 in U.S. Currency*, 461 U.S. at 567–68.  Plaintiffs rely on *May v. United States*, 519 F. Supp. 649 (S.D. Ohio 1981), for the proposition that once a search warrant has issued, the government requires less time to bring a forfeiture action because some of the investigation must already have been completed to support issuance of a warrant.  Although *May* was decided before *$8,8850 in U.S. Currency*, *May* examined factors similar to the *Barker* factors.  *May* stated that "the probable

cause necessary to validate the search and seizure of the property, generally, is sufficient probable cause to legitimize the filing of the forfeiture action." *Id.* at 653.

The Chillicothe Police Department acted diligently in investigating the case. From January 10, 2018, when the search warrant was executed and the property seized, to June 2018, Officer Taczak was issuing subpoenas and waiting for responses. From June to September, the Chillicothe Police Department was compiling the case. This is a reasonable amount of time to expect law enforcement to compile the results of their investigation.

But from November 9, 2018, when Officer Taczak submitted the case to the prosecutor, the Chillicothe Defendants have offered no explanation for the delay in bringing the indictment, other than being overworked and understaffed. Chillicothe is overwhelmed with the opioid crisis and has only three detectives working narcotics, two of which "are cross-assigned to joint task forces, assisting in federal investigations." (ECF No. 13 at 5). The Chillicothe Defendants assert that the Prosecutor's office has a backlog of 300 cases. (*Id.* at 6). The Chillicothe Defendants argue that forfeiture is included in the indictment, but the first indictment contained no forfeiture specification, and this deficiency was not remedied until August 16, 2019. The Chillicothe Defendants have attempted no explanation for the omission of a forfeiture count in the first indictment or for the additional delay before the second indictment. Thus, it appears that the Defendant's failure to bring a forfeiture specification in a timely manner is due to negligence.

Even were this Court to assign the justification of prosecutorial overload to the delay in forfeiture, such justification does not assist Defendants. Indeed, some courts have held more recently in applications of *Barker* in the context of delay on appeal that "lack of funding and, possibly, the mismanagement of resources by the Public Defender" cannot be "an acceptable

excuse for delay." *Harris v. Champion*, 15 F.3d 1538, 1562 (10th Cir. 1994) (collecting cases). This *Barker* factor argues in favor of Plaintiffs.

### b. Barker Factor 2: Claimant's Assertion of Rights

The second factor is the claimant's assertion of his rights. The Cremeans assert that they contacted the Chillicothe Law Director four times: once on June 30, 2018 (by letter), again on October 25, 2018, a third time on November 5, 2018, and a fourth time after the Ross County case was closed. (ECF No. 2 at 12). In addition to these informal requests, Plaintiffs filed a state court action for replevin. Plaintiffs did have one remedy of which they did not avail themselves. Ohio Revised Code § 2981.03(A)(4) allows an individual contesting the legality of a seizure to file a motion requesting return of the property. The hearing must then be held within twenty-one days. Ohio Revised Code § 2981.03(D) separately provides a process to request "conditional release" of forfeitable property.

Although the Cremeans did not avail themselves of all possible avenues to seek return of their property, their actions are nevertheless sufficient to show they adequately asserted their rights to the property. *See, e.g.*, *$8,850 in U.S. Currency*, 461 U.S. at 569 (finding that plaintiff did not assert his rights where he did not attempt to file an equitable action, request the Customs Service to refer the matter to the U.S. Attorney, or ask for return of the property under Federal Rule of Criminal Procedure 41(e), and "only occasionally" asked about the status of his petition for remission); *United States v. $75,900 in U.S. Currency*, Nos. 86–6063, 86–6064, 1987 WL 24747, at *3 (6th Cir. Dec. 14, 1987) (finding "motions for return of the seized property" adequate assertion of rights). This *Barker* factor also is resolved in favor of Plaintiffs.

### c. Barker Factor 3: Prejudice from the Delay

Finally, the Cremeans must show prejudice from the delay. The prejudice requirement is narrow—"the primary inquiry . . . is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *$8,850 in U.S. Currency*, 461 U.S. at 569. The Cremeans' primary focus has been the burden of being without their assets. But the burden of being without assets does not address the relevant prejudice inquiry—the ability to defend themselves on the merits of a forfeiture proceeding. Plaintiffs have also argued that the delay "has allowed evidence to go stale and memories to fade" and that there is an "increasing risk that important documents exonerating the Plaintiffs of any wrongdoing will be lost or misplaced over the years." (ECF No. 2 at 13). Plaintiffs have offered no evidence as to how the state's delay has prejudiced them in defending a forfeiture proceeding. However, as determined above, Defendant's failure to bring a forfeiture specification in a timely manner was due to negligence. Where, "the government's negligence caused the delay, the need to prove prejudice [to a claimant] diminishes as the delay increases" since "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *United States v. Brown*, 169 F.3d 344, 350–51 (6th Cir. 1999) (internal citations omitted). Accordingly, this factor weighs in favor of Plaintiffs.

### d. Balancing

The plaintiffs bear the burden of showing a strong likelihood of success on the merits. The Cremeans have met that burden. The Court weighs the *Barker* factors in determining whether there was a due process violation.

The delay in this case is substantial—it has been twenty months since officers seized the Cremeans' property. Although longer delays have been justified in prior cases under *Barker*,

those delays have often been due to factors not present here—pending administrative and criminal proceedings, the claimant's own contributions to the delay, or because of the claimant's failure to timely demand return of the property. See *United States v. Coffman*, 612 F. App'x 278, 290 (6th Cir. 2015) (delay of four and a half years from time of seizure to hearing on the merits justified where government brought forfeiture proceedings one month after jury verdict was rendered in underlying criminal proceedings and where remainder of delay was due to "judicial process at work"); *United States v. Ninety Three Firearms*, 330 F.3d 414, 425 (6th Cir. 2003) (finding a five year delay justified due in part to a pending criminal proceeding and in part due to claimant's failure to pursue "myriad options" available to him to regain his property); *United States v. Six Negotiable Checks in Various Denominations Totaling One Hundred Ninety One Thousand Six Hundred Seventy One Dollars & Sixty Nine Cents ($191,671.69)*, 207 F. Supp. 2d 677, 690 (E.D. Mich. 2002) (29 month delay justified where claimant did not timely bring claim or identify any prejudice in ability to litigate claims in action and where much of delay was due to pending administration petition for remission).

Additionally, while the Cremeans have made only vague assertions as to how they are prejudiced by the delay, the Government's negligence in bringing the forfeiture claim in a timely manner lessens the Cremean's burden of producing evidence demonstrating that prejudice. As the Sixth Circuit has noted in the context of a speedy trial violation, the very context in which the *Barker v. Wingo* test originates, "negligence [is not] automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999).

Further, this Court and others have previously ordered the return of goods where the forfeiture proceedings were brought in a dilatory manner. *See May*, 519 F.Supp. 649 (ordering

return after one year and three day delay); *Ford Motor Credit Co. v. New York City Police Dep't*, 394 F. Supp. 2d 600, 614 (S.D.N.Y. 2005), *aff'd sub nom. Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186 (2d Cir. 2007) (finding that city's delay in bringing forfeiture action violated Due Process Clause); *United States v. $23, 407.69 in U.S. Currency*, 715 F.2d 162, 165 (5th Cir. 1983) (affirming dismissal of forfeiture action for thirteen month delay, six months of which were unexplained). Thus, on balance, the Cremeans have shown a likelihood of success on the merits.

### B. Irreparability of Harm, Substantial Harm to Others, and Public Interest

Harm is irreparable if it "is not fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). A violation of a constitutional right is sufficient to show irreparable harm. *See, e.g.*, *Doe v. The Ohio State University*, 136 F. Supp.3d 854, 871 (S.D. Ohio 2016) (Graham, J); *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F.Supp.3d 948, 960 (S.D. Ohio 2015) ("[W]hen a constitutional right is being threatened or impaired, a finding of irreparable harm is mandated."). Because the Cremeans have shown a likelihood of success on the merits, they can rely on the due process violation to show irreparable harm. Further, the public has an interest in ensuring constitutional rights are vindicated, *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

This Court is at a loss to comprehend the state's failure to file in a timely manner civil forfeiture or request forfeiture in the first indictment. Due process requires a meaningful hearing within a meaningful time. This Court finds that a balancing of the preliminary injunction factors counsels for the issuance of a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) is hereby **GRANTED.**  Plaintiffs' Motion to Reopen the Preliminary Injunction Hearing (ECF No. 21) is **DENIED.**  Defendants' Motion to Supplement Record (ECF No. 27) is **GRANTED.**

**IT IS SO ORDERED.**

_s/Algenon L. Marbley_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**Dated: October 23, 2019**