# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **NICOLETTE CREMEANS**, *et al.*, | : | **Case No. 2:19-cv-02703** |
| | : | |
| | : | |
| **Plaintiffs,** | : | **Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **v.** | : | |
| | : | |
| | : | |
| **SAMANTHA TACZAK**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## OPINION & ORDER

This matter is before this Court on Defendants' Motion for Judgment NOV or alternatively, to Alter or Amend the Judgment, or alternatively for a new trial. (ECF No. 235); and Plaintiffs' Motion for Attorney's Fees (ECF No. 232), Motion for Prejudgment Interest (ECF No. 233), Motion for Sanctions (ECF No. 236), and Motion to Enforce Judgment (ECF No. 263). For the following reasons, Defendants' Motion (ECF No. 235) is **DENIED**, Plaintiffs' Motion for Attorney's Fees (ECF No. 232) is **GRANTED in part and DENIED in part,** and the Motion for Prejudgment Interest (ECF Nos. 233; 234) and Motion for Sanctions (ECF No. 236) are **DENIED**.

## I.  BACKGROUND

On June 26, 2019, Plaintiffs Nicolette and James Cremeans brought this case against the City of Chillicothe and several of its police officers, including Detective Samantha Taczak and former Chief of Police Keith Washburn. (ECF No. 4). Plaintiffs claimed violations of the Fourth and Fourteenth Amendments arising from a search and seizure on January 10, 2018. (*Id*. ¶¶ 8, 12, 15). The seized items included cash, "one jar of quarters and rolled change, lease agreements, an old rare coin collection, bank statements and other financial documents, car and motorcycle titles,

a cell phone, thumb drives, a camera, a hard drive, sim cards, financial documents, passports[,] and other property." (*Id.* ¶ 9).

With respect to Plaintiffs' Fourth Amendment claim, Plaintiffs argued "the arrests were warrantless and without probable cause, there was no search warrant for their persons or Ms. Cremeans' purse, and both the search warrant affidavit and search warrant are constitutionally defective." (ECF No. 4). As to the Fourteenth Amendment claim, Plaintiffs argued that Defendants violated Plaintiffs' Fourteenth Amendment rights by keeping Plaintiffs' property without due process. (ECF No. 4).

Defendants argued that after the execution of search warrants, Detective Taczak began investigating Mr. Cremeans for a drug trafficking offense, despite not finding any drugs in the search, based on the large amount of cash he could not explain possessing. (ECF No. 110 at 7). In November 2018, the case was turned over to the Ross County Prosecutor for presentation to a grand jury for indictment. (ECF No. 110 at 7). By the time Plaintiffs filed this case on June 26, 2019, however, the Ross County Prosecutor had neither brought a formal forfeiture action regarding the seized items nor charged Plaintiffs with any crimes. This Court held a preliminary injunction hearing in July 2019 and acknowledged that "[t]he Chillicothe Police Department acted diligently in investigating the case," but it was "at a loss to comprehend the state's failure to file in a timely manner civil forfeiture or request forfeiture in the first indictment." (ECF No. 31 at 20, 24).

On July 2, 2019, the Court partially granted Plaintiffs' request for a temporary restraining order, finding "a plausible claim for a constitutional violation" due to Defendants' delay in bringing a formal forfeiture action. (ECF No. 11 at 4). The Court ordered Defendants to "hold the Plaintiffs' property in trust" and to "refrain from diminishing, testing, or engaging in any spoliation

of the property until this Court rules on the Preliminary Injunction." (*Id.*). The Court held a preliminary injunction hearing on July 15 and 16, 2019, and found for Plaintiffs. While acknowledging that "[t]he Chillicothe Police Department acted diligently in investigating the case," the Court was "at a loss to comprehend the state's failure to file in a timely manner civil forfeiture or request forfeiture in the first indictment." (ECF No. 31 at 20, 24).

On August 16, 2019, about nineteen (19) months after the search and seizure at issue, Mr. Cremeans was criminally charged with a violation of O.R.C. § 2927.21: Receiving Proceeds of an Offense Subject to Forfeiture Proceedings. (ECF No. 27-1). On November 19, 2020, the criminal charges and forfeiture specification against Mr. Cremeans was dismissed due to insufficient evidence pursuant to Ohio Criminal Rule 29 (ECF No. 110 at 9). Finally, on March 22, 2021, Defendants notified the Court that they had "transferred $30,191.00 to Plaintiffs' counsel" and were "no longer holding any of Plaintiffs' personal property or currency." (ECF No. 86).

On August 17, 2022, this Court denied Plaintiffs' motion for summary judgment and granted in part Defendants' motion for summary judgment. Specifically, Defendants' motion was granted as to the Fourth Amendment claim, as this Court held that "Plaintiffs' claims for unconstitutional search, seizure, arrest, and detention are not viable." (ECF No. 133 at 17).

The remaining issue for trial was Plaintiffs' Fourteenth Amendment claim. When resolving the motions for summary judgment, this Court emphasized that a significant delay in initiating a forfeiture proceeding may constitute a violation of the fundamental due process protections enshrined in the Fifth and Fourteenth Amendments. *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 565 (1983). In evaluating such claims, courts weigh four factors: "the length of the delay, the reason for the delay, the claimant's assertion of his right, and the prejudice to the claimant." *United States v. Ninety Three*

3

*Firearms*, 330 F.3d 414, 424–25 (6th Cir. 2003) (citing *Barker v. Wingo* 407 U.S. 514, 530 (1972)). This framework draws upon the seminal analysis set forth in *Barker*. Among these considerations, the length of the delay serves as both the "triggering mechanism" and the "overarching factor" in the *Barker* analysis. *$8,850*, 461 U.S. at 565 (quoting *Barker,* 407 U.S. at 530). The Supreme Court has found a delay of 18 months to be "quite significant," *Id*., and has remarked that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

This Court applied the *Barker* analysis when granting Plaintiffs' Motion for Preliminary Injunction. This Court found that, "on balance, the Cremeans have shown a likelihood of success on the merits." (ECF No. 31 at 24). With respect to the first factor, this Court found that the length of delay was from the time of the seizure of Plaintiffs' property until the second indictment. As to the reasons for the delay, this court observed that the Chillicothe Police Department acted diligently in investigating the case. From January 10, 2018, when the search warrant was executed and the property seized, to June 2018, Officer Taczak was issuing subpoenas and waiting for responses. From June to September 2018, the Chillicothe Police Department was compiling the case. This Court noted that this was a reasonable amount of time to expect law enforcement to compile the results of their investigation. But from November 9, 2018, when Officer Taczak submitted the case to the prosecutor, the Chillicothe Defendants have offered no explanation for the delay in bringing the indictment, other than being overworked and understaffed.

The next factor, the claimant's assertion of his rights, also weighed in Plaintiffs' favor as they assert that they contacted the Chillicothe Law Director four times: once on June 30, 2018 (by letter), again on October 25, 2018, a third time on November 5, 2018, and a fourth time after the Ross County case was closed. (ECF Nos. 31 at 21; 2 at 12). In addition to these informal requests,

4

Plaintiffs filed a state court action for replevin. Although the Cremeans did not avail themselves of all possible avenues to seek return of their property, this Court found their actions to be nevertheless sufficient to show that they adequately asserted their rights to the property.

In denying the motions for summary judgment (ECF No. 133 at 24), this Court carefully considered the arguments pertaining to qualified immunity and employed the requisite two-step inquiry: first, whether the officers violated the Plaintiffs' constitutional rights; and second, if so, whether those rights were clearly established at the time of the alleged conduct. *Smith v. Stoneburner*, 716 F.3d 926, 929 (6th Cir. 2013). Turning to the first step, this Court stated it "ha[d] little doubt that Plaintiffs' constitutional rights were violated" and explained that "[t]he delay in this case—from the seizure of Plaintiffs' property in January 2018 to the second indictment in August 2019—was deemed 'substantial and presumptively prejudicial' in the Court's preliminary injunction ruling. (ECF No. 31 at 19)." (ECF No. 133 at 26-27). This Court then found that "[t]he fact remains: 'Due process requires a meaningful hearing within a meaningful time.' The Court was, and still is, 'at a loss to comprehend the state's failure to file in a timely manner civil forfeiture or request forfeiture in the first indictment.' Thus, the *Barker* analysis in the preliminary injunction ruling continues to show a constitutional violation." (*Id*. at 26-27) (citations omitted).

Although this Court determined that a due process violation was shown, it remained uncertain whether Defendants were responsible. This Court observed that "genuine issues of material fact remain regarding who is accountable for the deprivation." (*Id*. at 27). Consequently, the "core triable issues" remaining after the summary judgment phase were the following:

> (1) whether Detective Taczak and Chief Washburn were personally involved in the delay after November 9, 2018, such that they could be liable for violating Plaintiffs' due process rights; (2) whether the City of Chillicothe is liable under *Monell* for an illegal official policy of holding seized property without initiating timely forfeiture proceedings; and (3) what remedies, if any, Plaintiffs are entitled to receive.

(ECF No. 133 at 36).

5

In their Joint Proposed Pretrial Order, the parties indicated that they were "at an impasse on the scope of trial." (ECF No. 197). They explained that "Defendants maintain Plaintiff[s] must prove a constitutional violation at trial. Plaintiffs maintain this point has been settled as a matter of law, and the Court's prior ruling." *Id*. This was further reflected in the parties' motions *in limine*, as Defendants argue that, beyond the qualified immunity analysis, this Court offered no ruling on the underlying constitutional violation, and Plaintiffs did not seek partial summary judgment as to that element of their claim. (ECF No. 196 at 3). During the final pretrial conference, this Court explained that it was "fairly clear" in the summary judgment Opinion & Order that it decided the issue of whether there was a constitutional violation and that the only question is who is accountable. (ECF No. 237 at 7).

At trial, the parties presented evidence with respect to the entire 19-month delay at issue in this case. The evidence, however, was limited because this Court must exercise its discretion to exclude evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This Court found that detailing the underlying investigation connected to the search and seizure had a high risk of unfair prejudice, confusing the issues, and misleading the jury. As such, evidence was allowed to the extent that it proved: (1) there was an investigation and items were seized, (2) it led to an indictment, and (3) the indictment was later dismissed. (ECF No. 213 at 12).

The jury rendered its verdict on December 5, 2024. With respect to Plaintiffs' claim against Defendant Police Officer Samantha Taczak, the jury ruled in favor of Defendant Taczak. (ECF No. 218). Conversely, the jury found in favor of Plaintiffs on their claims against Defendant former Chief of Police Keith Washburn and the City of Chillicothe. (*Id*.). The jury awarded damages in

the amount of $5,000 to Plaintiff Nicolette Cremeans and $1.00 to Plaintiff James Cremeans. (*Id.*). Additionally, punitive damages totaling $10,000 were assessed against Defendant Washburn. (*Id.*). In accordance with the verdict, this Court entered judgment on December 6, 2024. (ECF No. 221).

After trial, Plaintiffs filed a Motion for Attorney's Fees (ECF No. 232); Motion for Prejudgment Interest (ECF Nos. 233; 234); Motion for Sanctions (ECF No. 236); and Motion to Enforce Judgment (ECF No. 263). Defendants filed a Motion for Judgment Notwithstanding the Verdict (JNOV) or alternatively, to alter or amend the judgment, or alternatively, for a new trial (ECF No. 235). These motions are ripe for this Courts review. Given that the substance of the majority of Plaintiffs' motions hinges upon the validity of the judgment entered following trial, this Court finds it appropriate to address Defendants' motion as a threshold matter. Plaintiffs' motions will be addressed in turn.

## II. LAW AND ANALYSIS

### A. Defendants' Motion for Judgment NOV or Alternatively to Amend Judgment or for New Trial

Defendants move for post-trial relief pursuant to Rules 50(b), 59(a), and 59(e) of the Federal Rules of Civil Procedure. They argue that judgment as a matter of law should be entered in their favor because the jury's verdict lacks an adequate evidentiary basis, is against the manifest weight of the evidence, and reflects plain legal error warranting correction to prevent a miscarriage of justice. (ECF No. 235 at 4). In the alternative, Defendants seek to alter or amend the judgment or, failing that, request a new trial on liability. (*Id.*). All three requests rest upon a common contention: that this Court erred in its treatment of the relevant constitutional violation and improperly limited Defendants' ability to present evidence in their defense.

Defendants first challenge the Court's determination that the constitutional violation in this case extended over a 19-month period, from the initial seizure of Plaintiffs' property on January

10, 2018, to the filing of the forfeiture specification on August 16, 2019.  Defendants argue that this Court "consistently held that the initial ten-month period" until submission of the case to the prosecutor on November 9, 2018 "did not violate the constitution" but "prior to trial this Court expressly defined the constitutional violation at issue as a 19-month delay." (ECF No, 235 at 4). They contend that this Court erred by allowing Plaintiffs to argue that this initial period was itself unconstitutional, while simultaneously limiting Defendants' ability to justify their conduct during that time. (*Id*. at 5). In support of the assertion that this Court previously held that the initial ten months did not violate the Fourteenth Amendment, Defendants cite three quotes from this Court's earlier rulings:

> This is a reasonable amount of time to expect law enforcement to compile the results of their investigation. (ECF No. 31 at 20).

> In the first 10 months, while Defendants diligently investigated the suspected drug offenses, it was reasonable to think that *Barker* and *$8,850* would forgive their delay. (ECF No. 133 at 30).

> Importantly, as illustrated in the preliminary injunction ruling, this Court's due process concerns arise from the delay *after* [November 9, 2018]. (*Id*. at 27)

These statements, however, were made in the context of preliminary injunction and summary judgment proceedings, where the Court undertook the *Barker* analysis to determine whether the delay—measured from seizure to forfeiture specification—implicated a constitutional violation. Ultimately, this Court concluded that the 19-month delay satisfied the first *Barker* factor, and that each *Barker* factor weighed in favor of Plaintiffs, thus, showing a constitutional violation. (ECF Nos. 31 at 19, 24; 133 at 26, 27).  This Court reiterated these findings during the summary judgment phase, as this Court observed that the *Barker* analysis in the preliminary injunction ruling continues to show a constitutional violation. (ECF Nos. 31 at 24; 133 at 27). This Court also clarified that, "[e]ven so, genuine issues of material fact remain regarding who is accountable for the deprivation." (ECF No. 133 at 27).

Defendants' attempt to divide the 19-month period into discrete constitutional and non-constitutional segments misapprehends the Court's analysis. (ECF No. 235 at 4-7). Indeed, this Court acknowledged that investigative reasons were given for part of the delay—until November 9, 2018—which would be "a reasonable amount of time" for an investigation. (ECF Nos. 31 at 20). But this Court referenced the investigative activity during the first ten months not to exclude it from constitutional consideration, but to underscore that Defendants were not entitled to summary judgment—regardless of any assertion of diligence (ECF No. 133 at 30)—and to assess whether the individual Defendants were personally involved such that they could be held liable for the violation. (ECF No. 133 at 30, 32, 36).

Defendants also challenge this Court's purportedly "improper" grant of summary judgment in favor of Plaintiffs regarding the 19-month delay without notice. (ECF No. 235 at 4–5 (citing ECF No. 196)). Specifically, Defendants argue that, aside from the qualified immunity analysis, this Court neither issued nor was requested to issue a ruling on the underlying constitutional violation in the summary judgment motions. (ECF No. 196 at 3). In support, Defendants invoke the well-established principle that district courts are generally discouraged from granting summary judgment on grounds not raised by the parties. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013). Defendants miss the point. Such rulings are permitted "'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir.2000). This Court unequivocally stated its position during the final pretrial conference. At that time, this Court issued its ruling on the motion *in limine*, expressly noting that "the only question is who, not whether, but who" bears responsibility for the constitutional violation. (ECF No. 237 at 7). Accordingly, Defendants were, at a minimum, on clear notice during the final pretrial

conference that they were obligated to present all evidence in response to the issue of a constitutional violation.

In the same vein, Defendants argue that this Court's treatment of the 19-month delay "instructed the jury in a manner that allowed them to consider joint and several liability—a concept not recognized under Section 1983." (ECF No. 235 at 7). Defendants rely on *Smith v. Michigan*, 256 F. Supp. 2d 704, 712 (E.D. Mich. 2003), and assert that this Court instructed the jury that it could find Defendants liable for a 19-month constitutional delay solely based on their conduct during the ten-month investigatory period. (See ECF No. 217). Indeed, as the court in *Smith* noted, "Section 1983 requires a showing of responsibility for personal wrongdoing" and "[e]ach defendant must be shown to have been personally involved in the alleged unconstitutional activity in order for liability to be imposed . . . ."

Defendants' argument is unpersuasive. Contrary to Defendants' assertion, the jury instructions in this case clearly reflected the individual nature of Section 1983 liability. This Court instructed the following:

> Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, all defendants are liable. Each defendant is entitled to a fair consideration of the evidence. Neither defendant is to be prejudiced should you find against the other. All instructions I give you govern the case as to each defendant.

(ECF No. 217 at 3). With respect to each Defendant, the jury was further instructed that Plaintiffs were required to prove by a preponderance of the evidence:

> 1) Defendant police officers performed acts that operated to deprive Plaintiffs of their federal Constitutional rights, as defined and explained in these instructions, by causing an unconstitutional delay in the return of Plaintiffs' property; 2) Defendant police officers then and there acted under the color of state law; and 3) Defendant police officers' acts were the proximate cause of damages sustained by Plaintiffs.

10

(*Id*. at 25). The constitutional right the jury was instructed on was the Fourteenth Amendment right, which provides:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(*Id*. at 24). The verdict forms then required the jurors to determine whether each Defendant was liable for the constitutional violation. (*Id*. at 40).

The jury's verdict further supports the conclusion that the instructions were properly applied. The jury found in favor of Defendant Taczak but found Defendants Washburn and the City of Chillicothe liable. (ECF No. 218). This outcome demonstrates that the jury carefully applied the instructions and evaluated each Defendant's individual liability based on the evidence presented during the relevant time period.

Defendants' claim of prejudice arising from the exclusion of certain evidence is similarly unavailing. Defendants contend that an injustice was created when this court allowed Plaintiff to pursue a theory of a 19-month constitutional delay while simultaneously preventing Defendants from presenting evidence of their conduct during the ten-month investigation. (ECF No. 235 at 7). Contrary to Defendants' characterization, this Court did not bar all evidence relating to their conduct during the initial ten-month period. Rather, in accordance with its ruling on motions *in limine*, this Court excluded evidence related to the specific drug-related nature of the investigation underlying the seizure of Plaintiffs' property, finding that such evidence posed a substantial risk of unfair prejudice and juror confusion. (ECF No. 213 at 12). Evidence was allowed to the extent that it proved: (1) there was an investigation and items were seized; (2) it led to an indictment; and (3) the indictment was later dismissed. (*Id*.). Accordingly, Defendants were not precluded from presenting testimony regarding their investigatory efforts, the timeline of the investigation, or their

11

rationale for retaining the property. As this Court explained during a sidebar at trial, this Court did not hold that Defendants could not testify as to the reasonableness of their actions during the investigation. (ECF No. 243 at 19).

Assuming, arguendo, that this Court erred in its characterization of the constitutional violation or in its evidentiary rulings, Defendants have failed to show that such errors entitle them to judgment as a matter of law, an amended jury decision, or a new trial.

### 1. Renewed Motion for Judgment as a Matter of Law

Defendants move, pursuant to Federal Rule of Civil Procedure 50(b), for judgment as a matter of law. (ECF No. 235 at 8). This motion revisits this Court's prior denial of Defendants' Rule 50(a) motion at trial's close and insists that the evidence, when viewed in the light most favorable to Plaintiffs, nevertheless fails to establish a due process violation. (ECF No. 244 at 419-423).

The phrase *"motion for judgment as a matter of law,"* as articulated in Federal Rule of Civil Procedure 50, integrates the formerly distinct legal doctrines of the "directed verdict" and "verdict JNOV". *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020). Under Rule 50(a), a party may bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed .R. Civ. P. 50(a)(2). If the district court denies the motion and the case is submitted to the jury, Rule 50(b) provides that "the movant may file a renewed motion for judgment as a matter of law" no later than 28 days after the entry of judgment or, "if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged[.]" Judgment as a matter of law may be granted if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" and when the

claim can "under the controlling law . . . be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a).

To prevail on a renewed Rule 50(b) motion, the moving party must establish that, "when, 'viewing the evidence in a light most favorable to the non-moving party [and] giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.'" *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 683 (6th Cir. 2024) (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012)). The burden is steep, as success on the motion requires a movant to "overcome the substantial deference owed a jury verdict." *Id.* (quoting *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016)).

Here, the jury returned a verdict and assessed an award of punitive damages against Defendant Washburn. (ECF No. 218). Defendants argue that the only evidence adduced against Chief Washburn was that he was the chief policy maker, which, in their view, is insufficient for the verdict and punitive damage. (ECF No. 235 at 8). With respect to the punitive damages, Defendants rely on *Baker v. Union Twp., Ohio*, No. 1:12-CV-112, 2013 WL 4502736, at *22 (S.D. Ohio Aug. 22, 2013), *aff'd in part, appeal dismissed in part sub nom. Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014). In *Baker*, however, the court addressed whether the individual with policymaking authority issuing a final decision was sufficient for ratification so as to hold a municipality liable. The court held that "A "single, isolated decision" by a policymaker is insufficient to demonstrate that a decision was the moving force behind a constitutional violation. *Baker*, 2013 WL 4502736, at *22. That case is inapposite here, where the issue is Washburn's individual liability under § 1983. Even so, as Plaintiffs respond, they presented sufficient evidence. (ECF No. 248 at 6).

Contrary to Defendants' assertion, Plaintiffs presented evidence establishing that Defendant Washburn bore responsibility for the delay both before and after November 9, 2018. During trial, Washburn acknowledged receiving notification about the execution of the initial search warrant and being made aware of a replevin hearing in November 2018, at which a state court judge ordered the return of Plaintiffs' property. (ECF No. 244 at 369). He admitted that he had the final authority to decide whether property would be released based on either an adjudication or the non-acceptance of criminal charges by the county prosecutor or the law director in misdemeanor cases (ECF No. 241 at 253-255). He explained that, while the City of Chillicothe had the authority to initiate forfeiture proceedings in misdemeanor cases, while felony cases—like the case relevant for the Plaintiffs property—would instead be handled by the Ross County prosecuting attorney's office. (ECF No. 241 at 234).

Further, Washburn testified that a chief of police could only return evidence after a case had been adjudicated, the prosecutor or law director declined to file charges, or there was a specific court order directing the release of the property (ECF No. 244 at 370-371). He also asserted that if he were to remove property and return it to a citizen without following these protocols, an investigation would ensue (ECF No. 244 at 372).

On the other hand, Defendant Taczak testified that the civil forfeiture policy, which Defendants could initiate, allowed for the evidence to be used in criminal proceedings. (ECF No. 244 at 397). Washburn admitted that any potential investigation into the release of evidence was discretionary (ECF No. 244 at 375-376), but emphasized that, as Chief of Police, he bore ultimate responsibility ("the buck stopped with" him) for determining whether the release of evidence could occur, and that he held final authority over the disposition of such evidence (ECF No. 241 at 253-255).

A jury could reasonably infer that Defendant Washburn's awareness of the executed search warrant, his knowledge of the replevin action, his understanding of the City of Chillicothe's authority to initiate civil forfeiture proceedings, and his ultimate discretion over the return of the property collectively rendered him responsible for the resulting delay. His failure to act following the replevin hearing, combined with his admitted discretion over the property's return and his acknowledgment of final authority, could lead the jury to conclude that he played a substantial role in prolonging the unconstitutional deprivation. The jury was entitled to infer from this testimony that Washburn was aware of the circumstances giving rise to the due process violation, had the authority to intervene, and failed to do so.

In sum, viewing the record in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, this Court finds that the jury's verdict was supported by legally sufficient evidence. Defendants have not met the heavy burden required under Rule 50(b); thus, the motion for judgment as a matter of law must be denied.

### 2.  Amend or Alter Judgment

To grant a motion filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, there must be "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts v. Costco Wholesale Corp*., 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Schs.,* 469 F.3d 479, 496 (6th Cir.2006)).

Here, Defendants identify neither newly discovered evidence nor an intervening change in the governing law. As discussed above, the jury's verdict and the imposition of punitive damages are supported by both the evidentiary record and controlling legal standards.

To the extent Defendants' arguments concerning the treatment of the 19-month delay are framed as asserting a clear legal error or a need to prevent manifest injustice, those arguments are unavailing. This Court explained in the Summary Judgment Opinion & Order that, pursuant to the *Barker* analysis, the length of delay was 19-months and there was a constitutional violation. While this analysis was made when addressing the "constitutional violation" step of the qualified immunity inquiry, it nonetheless relied on findings during the preliminary injunction phase that, "on balance, the Cremeans have shown a likelihood of success on the merits." (ECF No. 31). This Court made clear that the finding remained true but the question was "who is accountable for the deprivation." (ECF No. 133 at 27).

In its summary judgment ruling, this Court reiterated that this conclusion remained unchanged, clarifying that the question left for trial was not whether a constitutional violation occurred, but rather who was responsible for that violation. (ECF No. 133 at 26-27). Even assuming that this conclusion reflected an error, the jury was independently presented with evidence sufficient to evaluate and determine each Defendant's liability for the constitutional deprivation. The jury, as the ultimate factfinder, was free to assess the credibility of witnesses, weigh the evidence, and determine the legal responsibility of each party accordingly.

Accordingly, Defendants have failed to demonstrate any basis upon which Rule 59(e) relief should be granted. The motion to alter or amend the judgment is therefore denied.

### 3.  Motion for New Trial

Federal Rule of Civil Procedure 59(a) authorizes the Court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Sixth Circuit has construed this standard to mean that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict

16

being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Caudill Seed & Warehouse Co.*, 53 F.4th at 379 (quoting *Mosby-Meachem v. Memphis Light, Gas, & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018)).

Defendants do not make the argument that damages are excessive. In fact, they clarify that they "do not seek a new trial on the issue of damages." (ECF No. 235 n.3). Instead, they assert that the verdict was against the weight of the evidence and suggest that they were deprived of a fair trial due to how this Court and the parties addressed the 19-month delay at issue.

As discussed above, the jury's verdict was supported by evidence in the record, including testimony from Defendant Washburn from which a reasonable jury could conclude that he was personally involved in an unconstitutional delay in initiating a forfeiture proceeding or otherwise returning the property. Defendants' disagreement with the jury's conclusions does not provide a basis for disturbing its verdict. "When a party requests a new trial on the ground that the verdict is against the weight of the evidence, we will uphold the jury verdict if it is one 'the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified.'" *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (citation omitted)).

Defendants also assert that Plaintiffs "prejudicially argued" liability for a 10-month delay that did not violate the constitution. (ECF No. 235 at 4). To the extent this argument is intended to suggest trial unfairness, it mischaracterizes the Court's rulings, and the scope of the evidence admitted at trial.

As the record makes clear, the Court's evidentiary rulings did not prohibit Defendants from presenting evidence regarding the reasonableness of their conduct during the initial ten-month period. Parties were permitted to present evidence of conduct during the entire 19-month timeframe with a restriction on *detailing* the drug-related underlying investigation connected to the search and seizure. When it came to the underlying drug investigation, evidence was allowed to the extent that it proved: (1) there was an investigation and items were seized; (2) it led to an indictment; and (3) the indictment was later dismissed. (ECF No. 213 at 12). As this Court explained during a sidebar on the last day of trial, this Court did not hold that Defendants could not testify as to the reasonableness of their actions during the ten-month period. Rather, this Court restricted questions that went to proving that the investigation was a drug investigation. (ECF No. 243 at 19).

Further, to the extent Defendants imply that the jury was improperly instructed, that claim also fails. A court may grant a new trial for erroneous jury instructions "if they are confusing, misleading, and prejudicial." *E.E.O.C. v. New Breed Logistics,* 783 F.3d 1057, 1074 (6th Cir. 2015). To secure a new trial, however, it is not sufficient for the moving party to show that the court made a mistake in admitting certain testimony or by using improper jury instructions. A motion for a new trial "will not be granted unless the moving party suffered prejudice." *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 479 (6th Cir. 2013) (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 743 (6th Cir. 2005)). A jury verdict should not be vacated "based on the erroneous admission of evidence or improper jury instructions unless the testimony's admission or improper jury instructions 'amounted to more than harmless error.'" *Id*. (quoting *Field v. Trigg Cnty. Hosp. Inc.,* 386 F.3d 729, 736 (6th Cir.2004)).

Here, this Court instructed the jury as follows:

> This Court has found as a matter of law that the Cremeans' Constitutional rights to due process were violated. The Constitutional violation was the failure to return all of their property for 19 months from January 10, 2018, until August 16, 2019, which was the date of the forfeiture specification. There is no claim that there was a constitutional violation beyond August 16, 2019. You heard testimony about the date when the Cremeans' money was returned, March 19, 2021. That was because between August 16, 2019, the date of the forfeiture specification, and March 19, 2021, when the money was returned, this Court issued orders controlling the money.

(ECF No. 217 at 23). The jury was then tasked with determining whether each Defendant "performed acts that operated to deprive Plaintiffs of their federal Constitutional rights." (*Id*. at 25). Each Defendant's liability was individually considered and determined, and the jury was expressly instructed not to impute liability merely by association. (*Id*. at 3).

Thus, even if this Court found that the jury should not have been informed of the 19-month delay or that this Court found that there was a constitutional violation as a matter of law, any such error would be harmless given the jury's task of deciding whether each defendant should be held liable for the constitutional violation. Defendants were permitted to present evidence relevant to their defense, subject to the ordinary constraints of the rules of evidence; the jury was properly instructed on the applicable law; and the verdict reached was reasonable and supported by the evidence.

Accordingly, Defendants' motion for a new trial is denied.

### B. Plaintiffs' Motion for Attorney's Fees

Plaintiffs seek an award of attorney fees. As this Court has previously recognized, the prosecution of this case involved representation by two distinct groups of counsel: (1) attorneys Derek Farmer and Sandra J. Finucane ("Former Counsel"); substituted by (2) attorneys Joyce D. McKinniss; Joshua E. Pittman; Edward Carter and Dustin M. Koenig ("Trial Counsel"). (ECF No. 225). Plaintiffs were represented by Former Counsel until August 22, 2024, at which point Trial Counsel was substituted in their stead following the passing of Mr. Farmer. (ECF Nos. 179; 232

19

at 9, 14). Trial Counsel undertook various pre-trial responsibilities, including the preparation of motions *in limine* and proposed jury instructions, and continued representation through the conclusion of trial. Following the verdict, Trial Counsel withdrew, and Ms. Finucane was substituted as counsel of record. Plaintiffs now seek an award of reasonable attorney's fees for the work performed by Former Counsel.

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court to award reasonable attorney fees to the "prevailing party" in a civil rights action brought under 42 U.S.C. § 1983. A plaintiff is not entitled to any attorney fees, however, unless it is a "prevailing party." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, (1989). Section 1988 "requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Tchrs. Ass'n*, 489 U.S. at 791–92. Once it has established prevailing party status, the "degree of the plaintiff's overall success goes to the reasonableness . . . not to the availability of a fee award." *Id*. at 793.

When a party is a "prevailing party" under § 1988, an award of reasonable attorney's fees is "mandatory" absent "special circumstances" that would render the award unjust. *Deja Vu v. Met. Gov't of Nashville & Davidson Cty.*, 421 F.3d 417, 420 (6th Cir. 2005); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Additionally, courts may adjust the amount of the award based on the prevailing party's "degree of success" in obtaining relief. *Deja Vu*, 421 F.3d at 436.

After finding that a party is entitled to an attorneys' fees award, a court must then determine whether the hours claimed by the petitioner are reasonable. *Hensley v. Eckerhart,* 461 U.S. 424,

434 (1983). The "degree of the plaintiff's overall success goes to the reasonableness ... not to the availability of a fee award." *Garland,* 489 U.S. at 793. When making a reasonableness determination, the Court should first calculate the "lodestar" amount, a multiple of the number of hours reasonably expended in the litigation and the reasonable hourly rate. *Imwalle v. Reliance Med. Prods.,* 515 F.3d 531, 551 (6th Cir.2008) (citing *Hensley,* 461 U.S. at 433). The petitioning attorney has an obligation to weed out hours that are excessive, redundant, or otherwise unnecessary from his or her fee request, *Hensley,* 461 U.S. at 434, and bears the burden of proving that the number of hours expended was reasonable, *Granzeier v. Middleton,* 173 F.3d 568, 577 (6th Cir.1999). Once a party has established that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Imwalle,* 515 F.3d at 552 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546 (1986)).

### 1.  *Prevailing Party Status*

Plaintiffs assert that they are prevailing parties both in connection with the preliminary injunction proceedings and the ultimate outcome at trial. (ECF No. 232 at 2-9). Defendants, however, maintain that this Court's review of Plaintiffs' motion should be confined to the work performed in connection with the preliminary injunction, and further contend that Plaintiffs fail to satisfy the requisite standard for prevailing party status at that stage of the litigation. (ECF No. 251 at 3-7).

This Court finds that Plaintiffs are prevailing parties entitled to an award of attorney's fees based on the jury's verdict in their favor.[1] A plaintiff crosses the threshold for a fee award under §

---

[1] As this Court noted after trial, a credible argument may also be made that Plaintiffs achieved prevailing party status as early as the issuance of the Preliminary Injunction, when they were represented by their current counsel. (ECF No. 225). This Court ultimately found the Plaintiffs were a

1988 "when the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989); *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006). Here, the jury rendered a verdict in Plaintiffs' favor on their Fourteenth Amendment claim against Defendants Washburn and the City of Chillicothe and further imposed punitive damages against Defendant Washburn.

Defendants argue that Plaintiffs' fee motion should not be evaluated in light of the trial outcome because the fees in the motion, Former Counsel's fees, were not fees in connection with that phase of the litigation. (ECF No. 251 at 3). This argument is without merit. The relevant inquiry under § 1988 is whether the party prevailed—not whether the attorney seeking fees was counsel of record at the time of the prevailing result. *See, e.g.*, *Touzout v. Am. Best Car Rental KF Corp.*, No. 15-61767-CIV, 2017 WL 5957664 (S.D. Fla. Nov. 30, 2017) (awarding attorney fees to both trial and former counsel where former counsel represented plaintiff from the inception of the case until its withdrawal, one year before trial; although former counsel did not try the case, the plaintiffs prevailed at trial).

Defendants also argue that, even if the trial is considered, Plaintiffs did not achieve a sufficient level of success to justify a fee award. (ECF No. 251 at 3). Specifically, Defendants note that they extended a pretrial settlement offer of $80,000, whereas the jury ultimately awarded Plaintiffs a total of $15,001 in damages. (*Id.*). They argue this outcome, an 18.75% recovery relative to the offer, demonstrates a lack of success warranting attorney's fees. (*Id.*).

---

prevailing party and invited both Former Counsel and Trial Counsel to file motions for attorneys' fees. (ECF No. 225 at 10-13). That said, because this Court concludes again that Plaintiffs prevailed at trial, it need not reach this issue.

Courts, however, consider a rejected settlement offer as it pertains to the *degree* of success obtained, not to whether a party has *prevailed* within the meaning of the statute. *See, e.g.*, *Hines v. City of Columbus, Ohio*, 676 F. App'x 546, 556 (6th Cir. 2017) ("Indeed, a trial court abuses its discretion when it does not consider the relationship between the fee awarded and the success obtained. Considering a rejected settlement offer is one way of measuring the degree of success.") (internal citation omitted). Thus, while the pretrial offer may inform the Court's discretion in determining the appropriate amount of fees, it does not negate Plaintiffs' prevailing party status following a jury verdict in their favor.

The central dispute, therefore, is not whether Plaintiffs are prevailing parties, but whether the fees sought are reasonable.

### 2. Reasonableness of Fees

The initial step in assessing the reasonableness of the requested fees is to calculate the lodestar amount, which is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

### a. Reasonable Rate

This Court "has broad discretion in determining a reasonable hourly rate for an attorney." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016). In exercising that discretion, courts may be guided by the prevailing market rate, "which is defined as 'the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *Id*. (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Additionally, a "court may look to 'a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'"

*Id.* at 716 (quoting *Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 Fed.Appx. 496, 499 (6th Cir. 2011).

Here, Plaintiffs seek approval of a $525 hourly rate for Former Counsel's work. In Ms. Finucane's affidavit, she explained that Mr. Farmer was a seasoned trial attorney with over 20 years of experience in Section 1983 civil rights litigation and constitutional law. (ECF Nos. 232-1 ¶¶ 9, 10; 232-4). She further notes that she has been licensed since 1996 and brings 28 years of experience providing litigation support in Title VII and § 1983 cases, in addition to representing clients on appeal in both state and federal courts. ((ECF No. 232-1 ¶¶ 1-2). She does not attest what their standard hourly rate is for similar cases.

To substantiate the requested rate, Plaintiffs cite *Caskey v. Fenton*, No. 2:20-CV-1549, 2024 WL 2832689, at *4 (S.D. Ohio June 4, 2024), in which this Court applied a $500 hourly rate for an attorney in a case involving a false arrest claim under 42 U.S.C. § 1983. The attorney attested that he had entered private practice in 1974, regularly handled civil rights cases, and had spent over four decades focusing on police misconduct litigation. He also affirmed that the $500.00 hourly rate was in line with other attorneys in the area with equivalent experience, skills and expertise. *Caskey v. Fenton*, No. 2:20-CV-1549, ECF No. 167-7. Plaintiffs also reference *Yerkes v. Ohio State Highway Patrol*, No. 2:19-CV-2047, 2024 WL 4929293, at *14 (S.D. Ohio Dec. 2, 2024), where the court approved a $525 hourly rate for a solo practitioner with over 20 years of litigation experience in employment law and who affirmed that his standard rate was $525. In *Yerkes*, however, the plaintiffs were the prevailing party in a case involving employer discrimination and retaliation claims. *Yerkes*, 2024 WL 4929293, at *1.

Defendants did not present any argument challenging the reasonableness of the requested rate. Instead, they simply requested an evidentiary hearing to address the hours expended and the

applicable rate. (ECF No. 251 at 7 n.4). Under Local Rule 7.1(b), if a motion requires an evidentiary hearing, it is the responsibility of the movant to obtain a date for such a hearing. In all other instances, if oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, the party may request such oral argument but the grounds for any such request must be succinctly explained. Importantly, evidentiary hearings are not required in the context of motions for attorney's fees. *Trs. for Michigan Laborers Health Care Fund v. E. Concrete Paving Co.*, 948 F.2d 1290 (6th Cir. 1991) ("Evidentiary hearings are not required in attorney's fees determinations."). Defendants' explanation for the request, "to cross examine counsel and develop a record on the hours and rate submitted in order to adequately respond to this Motion" is unpersuasive. (*See* ECF No. 251 at 1 n.1). Provided Defendants had any issues with Plaintiffs' rates and hours submitted, those issues could have been raised in the briefing. No issues, however, were raised, and this Court finds that a hearing would not materially aid in the resolution of the motion for attorney's fees.

Upon review, the Court finds the $500 rate approved in *Caskey* to be both analogous and reasonable under the present circumstances. As in *Caskey*, the underlying litigation here involves claims under § 1983 arising from alleged civil rights violations and police misconduct. Both Former Counsel and the attorney in *Caskey* possess comparable specialization in civil rights and constitutional litigation. Accordingly, this Court concludes that a **$500 hourly rate** is appropriate and well supported by both precedent and the record in this matter.

#### b. *Reasonable Hours*

This Court next considers whether the number of hours expended was reasonable. In reviewing counsel's record of hours in support of a motion for attorney's fees, courts are not obligated to function as "green-eyeshade accountants" or to "achieve auditing perfection," Rather,

25

the court is tasked with rendering "rough justice." *Northeast Ohio Coal. for the Homeless*, 831 F.3d at 703 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). This standard permits courts to rely on informed estimates grounded in their "overall sense of a suit." *Id.*

"Under Sixth Circuit precedent, the party requesting attorneys' fees 'bears the burden of proof on the number of hours expended.'" *Woods v. Willis,* 631 F. App'x 359, 365 (6th Cir. 2015) (quoting *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir.1999). To that end, when determining "the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim." *Imwalle*, 515 F.3d at 552 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co*., 732 F.2d 495, 502 (6th Cir.1984)). Counsel is not "required to record in great detail how each minute of his time was expended" but counsel "should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.

Courts have found motions for fees sufficiently supported by "itemized billing records that specify, for each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed." *Imwalle*, 515 F.3d 531, 553 (6th Cir. 2008); *see also Iron Workers Dist. Council of S. Ohio & Vicinity Benefit Tr. v. C&C Reinforcing LLC*, No. 3:22-CV-179, 2023 WL 7336188, at *2 (S.D. Ohio Nov. 7, 2023) ("The Sixth Circuit has deemed itemized billing records sufficient where such records specify for each entry: (a) the date of billed time; (b) the individual recording the time; (c) the fractional hours billed; (d) the specific task completed; and (e) the information identifying the client."); *York v. Velox Express, Inc*., No. 3:19-CV-00092-CHL, 2022 WL 20804127, at *10 n.3 (W.D. Ky. Mar. 25, 2022) (same); *Failali v. E. Coast Performance LLC*, No. 5:22-CV-2038, 2023 WL 5671937, at *4 (N.D. Ohio Sept. 1, 2023) (same); *Powell v. Divine Status LLC*, No. 2:23-CV-501, 2025 WL 1318418, at *2 (S.D. Ohio May 7, 2025) (same); *Yerkes*, 2024 WL 4929293, at *14 (same).

26

Here, Plaintiffs report a total of 838.6 hours of work. (ECF No. 232 at 20). This number is consistent with the Court's findings in *Caskey*, a case of comparable complexity and duration. 2024 WL 2832689, at \*4. In *Caskey*, this Court found that 933.3 hours billed by two attorneys was reasonable where the litigation spanned approximately three and a half years, involved complex and contested issues, and culminated in a jury trial. Notably, the defendants in that case did not object to the plaintiff's lodestar calculation. Similarly, in the case *sub judice*, Plaintiffs report hours covering work performed between 2019 and 2024. (ECF No. 232-1 at 6-29). The litigation was vigorously contested, involving numerous dispositive and non-dispositive motions, appellate proceedings, a temporary restraining order and preliminary injunction hearing, and summary judgment briefing. Given the scope and intensity of the proceedings, the hours reported do not appear excessive and fall within the bounds of reasonableness.

The billing records submitted in support of Plaintiffs' motion provide sufficient detail. The records include the date of each entry, the time spent on each task recorded in tenths of an hour, the individual who performed the task, and a brief description of the work completed. Ms. Finucane attests that these records were maintained contemporaneously and reflect time spent solely on this case. (ECF No. 232-1 ¶ 11). She further affirms that she made reductions to exclude time spent on administrative or duplicative tasks, as well as time spent on various client calls and drafting efforts. (*Id.*) This approach is consistent with the Supreme Court's guidance that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.

The time records presented do not reflect any facially unreasonable charges, and aside from the argument that time should be limited to the preliminary injunction, Defendants do not

27

otherwise object to the number of hours reported. (ECF Nos. 232-1 at 6–29; 251 at 8). Defendants vigorously contend that Plaintiffs' motion for Former Counsel's fees should be confined to the specific relief on which Former Counsel prevailed, namely, the preliminary injunction. (ECF No. 251 at 7-8). They argue that any hours spent thereafter "were not necessary to the successful part of litigation." (*Id*.). This argument misconstrues the relevant legal standard. The question is not whether a particular attorney of record was representing Plaintiffs at the precise moment of prevailing, but whether the attorney's work contributed to the claims on which Plaintiffs ultimately prevailed.

The sole authority Defendants cite in support of this position, *Hines v. DeWitt*, No. 2:13-CV-1058, 2016 WL 2342014 (S.D. Ohio May 4, 2016), reinforces this Court's approach. In *Hines*, the court acknowledged the importance of the plaintiff's overall success in relation to certain claims when considering whether to reduce the attorney's fees determined by the lodestar figure. The focus, however, was on the prevailing party's success as a whole, rather than the specific accomplishments of individual counsel. Indeed, attorney's fees awards may be limited based on the degree of success towards certain claims, but not limited to certain counsel or certain phases of the case. Specifically, the court held that the lodestar figure may be modified upward or downward based on the results obtained, emphasizing that "[w]hen analyzing the degree of success in the context of a lawsuit where it is 'difficult to divide the hours expended on a claim-by-claim basis. . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Hines*, 2016 WL 2342014, at *7 (quoting *Hensley*, 461 U.S. at 435). This Court will determine the lodestar figure and then,

28

in turn, assess the time spent on unsuccessful claims as part of its consideration of whether to adjust the lodestar figure later in this Opinion & Order.

Given the detailed and contemporaneous nature of the billing records, the extensive and protracted nature of the litigation, and the contentious conduct of the parties throughout, the Court finds that **838.6 hours**, the number of hours expended by Former Counsel, is reasonable.

### 3.  Adjustments to Lodestar Figure

After deciding the lodestar figure, a court may consider other factors to determine whether an upward or downward adjustment is warranted to achieve a reasonable award. *Geier v. Sundquist,* 372 F.3d 784, 792 (6th Cir. 2004) (citing *Hensley,* 461 U.S. at 434). Courts are guided by twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). "The Supreme Court, however, has limited the application of these factors, noting that 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Id*. (quoting *Hensley,* 461 U.S. at 434 n.9)

### a.  Upward Adjustment

Fee enhancements are permissible in rare cases of "exceptional success." *Barnes,* 401 F.3d at 745. The party seeking an enhancement bears the burden of showing that such an adjustment is "necessary to the determination of a reasonable fee." *Gonter v. Hunt Valve Co*., 510 F.3d 610, 621

(6th Cir. 2007) (quoting *Blum v. Stenson,* 465 U.S. 886, 898 (1984)). As the Sixth Circuit has emphasized, the quality of representation is ordinarily "reflected in the reasonable hourly rate." *Id.*

Plaintiffs urge this Court to find that a fee enhancement, or multiplier, is appropriate in the case *sub judice*. They contend that an upward adjustment is warranted given the results achieved through efforts of a solo practitioner who undertook this matter on a contingency basis over five years that, notably, marked the final chapter in counsel's legal career. Plaintiffs also emphasize the broader significance of the case, noting that, "presently in Ohio, no legislation exists to prevent political subdivisions from taking peoples' property with insufficient evidence to tie it to any crime for all eternity." (ECF No. 232 at 19).

The success achieved in this case, however, falls short of the "exceptional success" standard warranting an upward adjustment. For example, Plaintiffs cite *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 912–13 (S.D. Ohio 2001), where the court applied an upward adjustment of 50% in a class action that spanned over 11 years of contentious litigation. (ECF No. 232 at 18). That case involved claims against eye banks for harvesting corneas from plaintiffs' decedents without plaintiffs' consent. The court emphasized the solo attorney's work, contingent nature of the fee arrangement, the lack of precedent, and the complexity of the legal theory and concluded that the representation was "superior to that one would expect in light of the hourly rates charged." *Id*. at 913. The court also noted it was a cause of action which a number of attorneys declined to participate, underscoring the case's difficulty and unpopularity. *See id*.

*Brotherton*, like other cases cited by Plaintiffs, arose in the context of complex and often novel class actions yielding extraordinary results. *See, e.g.*, *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 26, 2011) (finding 2.39 multiplier reasonable following settlement in a class action involving unique claims that were not

subject to clear precedential support and further litigation would have required substantial litigation efforts including expert testimony, voluminous discovery, and extensive motion practice); *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009) (finding 2.42 multiplier reasonable, noting that "[r]ewarding attorneys in securities class actions is important because absent class actions, most individuals would lack the resources to litigate cases, and individual recoveries are often too small to justify the burden and expense of such litigation."); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 939 (N.D. Ohio 2003) (finding reasonable an effective overall lodestar multiplier of about 2.4 in the complex and novel class litigation that resulted in an "almost inconceivable" settlement); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (upholding a multiplier of 2 at the district court's discretion in the context of a class settlement); *In re Revco Sec. Litig., No.* 851, 1992 WL 118800, at *6 (N.D. Ohio May 6, 1992) (approving a 2.5 multiplier in complex securities class action litigation given the risk of nonpayment).

While the case *sub judice* is undoubtedly important, it does not reflect the same degree of complexity, novelty, or extraordinary result as those that have justified upward departures from the lodestar figure. Even outside of the class litigation context, courts have emphasized that multipliers are reserved for rare or extraordinary circumstances which are conditions not present here.

Plaintiffs also cite *Barnes*, where the Sixth Circuit affirmed the district court's application of a 1.75 multiplier "because of the 'novelty and difficulty' of this question and because of the 'immense skill requisite to conducting this case properly.'" 401 F.3d at 746. There, the plaintiff, a pre-operative male-to-female transsexual police officer in 1999, brought a Title VII action against the city, alleging she was demoted due to sex discrimination based on a failure to conform to sex

stereotypes. The district court acknowledged that "few lawyers locally or nationally" would have readily taken on a case so "highly controversial." *Barnes v. City of Cincinnati*, No. 1:00 CV 780, 2006 WL 418651, at *2 (S.D. Ohio Feb. 21, 2006) (quoting *Barnes*, 401 F.3d at 746). A jury returned a verdict in Barnes's favor in the amount of $320,511 and the district court awarded Barnes $527,888 in attorneys fees and $25,837 in costs. *Barnes*, 401 F.3d at 733. The Sixth Circuit affirmed, finding that the district court did not abuse its discretion by applying a multiplier that nearly doubled the attorneys fees award. *Id*. at 746. *Barnes*, however, was no ordinary Title VII sex discrimination case. The district court noted that the circumstances made the claims unique and demanded novel, creative, and difficult legal theories. *Id*.; *see also Barnes*, 2006 WL 418651, at *2.

The same result obtains when examining other cases cited by Plaintiff. (ECF No. 232 at 18). In *Quinn v. Nassau Cnty. Police Dep't*, 75 F. Supp. 2d 74, 79 (E.D.N.Y. 1999), the court found a 10% upward adjustment appropriate due to the groundbreaking nature of the case and the significant likelihood the plaintiff would not prevail. The court noted that the claims involved, claims of sexual orientation discrimination in employment, generally had not enjoyed favorable legal protection. Likewise, in *Shakman v. Democratic Org. of Cook Cnty.*, 677 F. Supp. 933, 945 (N.D. Ill. 1987), *opinion modified on reconsideration*, 844 F. Supp. 422 (N.D. Ill. 1994), the court awarded a one-third enhancement where counsel demonstrated "imagination and creativity" in persuading the court to recognize constitutional protections not previously afforded in that context.

Unlike *Barnes*, *Quinn*, or *Shakman*, the instant case does not break new legal ground, nor does it involve the type of widespread legal resistance or factual adversity that has traditionally justified multipliers. As Defendants point out, this Court found during summary judgment that Plaintiffs' due process rights were clearly established—and that those rights had, in fact, been

violated. Plaintiffs' early success in obtaining a preliminary injunction further underscores that this case did not present the kind of legal uncertainty typically associated with multiplier awards.

In sum, while Plaintiffs present compelling considerations in favor of an enhancement, they have not shown that the legal theories advanced were novel, the representation uniquely arduous, or the outcome so extraordinary as to fall outside the scope of what is already captured by the lodestar calculation. The lodestar already accounts for the effort and contentious nature involved in this case. Accordingly, Plaintiffs' request for an upward adjustment is denied.

### b. Downward Adjustment

It is well established that, after determining the basic lodestar, the degree of success obtained is the most important factor in determining the reasonableness of a fee award. *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004) (citing *Hensley,* 461 U.S. at 434–36). Defendants argue that Plaintiffs' fee award should be reduced by 50% based on Plaintiffs' failure on the Fourth Amendment Claims and the limited results of the preliminary injunction. (ECF No. 251 at 9).

Indeed, an award based on the total number of hours reasonably expended on the litigation might result in an excessive amount if the claimant has achieved only partial success. *Hensley,* 461 U.S. at 435. As such, if a plaintiff has achieved only partial success in relation to the overall scope of the litigation, the requested fee may be adjusted downward from the lodestar figure to reflect that limited success. *Hensley,* 461 U.S. at 435–36. There is "no precise rule or formula" for making this determination. *Id.* at 436. A court may try to identify specific hours to be eliminated or may reduce the overall award to account for the limited degree of success. *Id.* at 435–37. A court may not, however, reduce attorney's fees based on "a simple ratio of successful claims to claims raised."

*DiLaura,* 471 F.3d at 672 (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tenn.,* 421 F.3d 417, 423 (6th Cir.2005)) (internal quotation marks omitted).

When determining whether to reduce the lodestar figure for degree of success, courts are instructed to consider: "(1) whether the claims on which the plaintiff failed to prevail were or were not related to the claims on which he or she succeeded, and (2) whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle*, 515 F.3d at 552 (citing *Hensley*, 461 U.S. at 434). Work on an unsuccessful claim cannot be considered to have been "expended in pursuit of the ultimate result achieved" where the plaintiff has presented distinctly different claims for relief based on different facts and legal theories. *Id.* (quoting *Hensley*, 461 U.S. at 435). But where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 552 (quoting *Hensley*, 461 U.S. at 435). "When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Id*. at 554 (quoting *Thurman v. Yellow Freight Sys.,* 90 F.3d 1160, 1169 (6th Cir.1996)).

Here, the claims on which the Plaintiffs failed to prevail were not related to the claims on which they succeeded. Plaintiffs argue the claims all involve a central nucleus of facts, i.e. they constellate around the seizure of their property on January 10, 2018, and Defendants' refusal to return it or bring a forfeiture action for 19 months. (ECF No. 232 at 15). Plaintiffs sought relief for a Fourth Amendment claim and a Fourteenth Amendment claim. The Fourth Amendment claim

alleged Defendants were liable for an unlawful search and seizure of Plaintiffs' property, as well as unlawful arrest and detention. (ECF No. 4). Plaintiffs argued that the search warrant failed to meet the particularity requirement and that the accompanying affidavit did not establish probable cause. (ECF No. 94 at 7–17). Plaintiffs also request a *Franks* hearing on whether Detective Taczak fabricated information in the affidavit. (*Id*. at 11 n. 4). Both parties sought summary judgment with respect to the claim. (ECF No. 133 at 7). This Court found that Plaintiffs' claims for unconstitutional search, seizure, arrest, and detention are not viable. Summary judgment for Defendants was granted. (ECF No. 133 at 17). The Fourteenth Amendment claim went to trial. The claim addressed the ensuing delay in bringing a forfeiture action for the property seized. As such, the Fourth Amendment claim involved the conduct leading to and during the search and seizure, while the Fourteenth Amendment claim was regarding the conduct thereafter. As such, the claims were distinct issues with related but distinct facts and legal theories. *See, e.g*., *Imwalle*, 515 F.3d at 552 ("Work on an unsuccessful claim cannot be considered . . . where the plaintiff has presented distinctly different claims for relief based on different facts and legal theories").

Turning to the second question, Defendants also contend a reduction is warranted because Plaintiff did not achieve a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees. (ECF No. 251 at 9). They argue that "the results of the preliminary injunction in practice were not much. Plaintiffs obtained limited success in getting some items returned—but the bulk of items and the main thing at issue, the currency, was not returned until Defendants' voluntary acts. And Plaintiffs fee award should be greatly reduced on that basis." (*Id*.). Defendants also contend that trial "was not a success as defined under 1983. As outlined in Defendants' opposition to PJI, filed contemporaneously, these Defendants offered $80,000 before trial. At trial, Plaintiffs obtained damages of $15,001, combined. (*Id*.). Defendants

emphasize that this is only 18.75% of what was offered pretrial and is not success as defined in these terms. (*Id*.). On the other hand, Plaintiffs point to Former Counsel's success achieved during the Preliminary Injunction phase and Summary Judgment phase. (ECF No. 232 at 16). This success was towards the due process claims and defeated the defendant's arguments that the individual officers were entitled to qualified or absolute immunity. *Id*.

Indeed, "'[T]he amount of damages awarded as compared to the amount sought' in a damages claim is one way to think about the degree of success." *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Moreover, the Sixth Circuit has recognized that courts may consider substantial settlement offers that are rejected in calculating fee awards as part of the "degree of success" in the litigation. *Kritcher v. Prudential Sec., Inc*., 799 F. App'x 376, 379 (6th Cir. 2020). This is because "[i]n a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney." *Id*. (quoting *Marek v. Chesny*, 473 U.S. 1, 11 (1985)). To this end, spurned settlement offers are considered as "one factor" when considering the degree of success. *See id.*

Plaintiffs, in their Amended Complaint, requested the following relief: (1) an Order declaring Defendants' act of failing to return Plaintiffs' property unconstitutional; (2) an Order declaring Defendants' acts of searching and seizing Plaintiffs' property with a defective search warrant affidavit and search unconstitutional; (3) an Order declaring Defendants' acts of arresting and detaining the Plaintiffs and seizing property from their persons and purse, without an arrest warrant, probable cause, or a search warrant for their persons unconstitutional; (4) an Order enjoining Defendants to return said property to plaintiffs; (5) an Order for reasonable attorney fees

to be awarded to Plaintiffs' counsel; (6) any other relief this Court deems appropriate, fair, and equitable; and (7) an award over $25,000 in compensatory and punitive damages. (ECF No. 4 at 8).

While Plaintiffs failed to obtain the relief related to the Fourth Amendment claim, namely requests numbers (2) and (3); this Court finds Plaintiffs succeeded in achieving requests related to the Fourteenth Amendment claims, namely requests (1) and (4).

After the Preliminary Injunction hearing, this Court found for Plaintiffs and acknowledged that "[t]he Chillicothe Police Department acted diligently in investigating the case," the Court was "at a loss to comprehend the state's failure to file in a timely manner civil forfeiture or request forfeiture in the first indictment." (ECF No. 31 at 20, 24). Defendant appealed. (ECF No. 32). On April 7, 2020, the Court granted Plaintiffs' motion to enforce the preliminary injunction (ECF No. 45 at 8–9) and partially stayed that order "as to the $30,855.82 listed in the August 2019 forfeiture specification . . . pending resolution of the appeal." (*Id*. at 8). All other property was to be returned without delay, "including cash in the amount of $2,859.18" (*i.e.*, the difference between the sum Plaintiffs allege was seized and the amount listed in the forfeiture specification) and the following items:

> one jar of quarters and rolled change, lease agreements, an old rare coin collection, bank statements and other financial documents, car and motorcycle titles, a cell phone, thumb drives, a camera, a hard drive, sim cards, financial documents, car keys, passports[,] and other property.

(*Id*. at 8–9). Defendants did not return the cash and coins immediately, so this Court set a show-cause hearing. Defendants argued "that they [were] unable to comply . . . because some of the specific property that was listed—the rolled coins and change and the rare coin collection—were included in the sum total of the forfeiture specification." (ECF No. 58 at 4). In an order dated May 12, 2020, the Court found Plaintiffs had not offered evidence of the total amount of cash allegedly

taken, so it excused Defendants from returning the $2,859.18. (*Id*. at 4–5). The Court reiterated its order to "turn over all physical property"—including the coins, since that particular property was not described in the forfeiture specification. (*Id*. at 5). Once the criminal charges against Mr. Cremeans were dismissed in state court, Defendants voluntarily dropped their appeal. (ECF No. 71). Defendants ultimately notified the Court on March 22, 2021, that they had "transferred $30,191.00 to Plaintiffs' counsel" and were "no longer holding any of Plaintiffs' personal property or currency." (ECF No. 86). Defendants contend that, because they voluntarily altered their conduct before the appeal resolved, the fee award should be greatly reduced. (ECF No. 251 at 9). This, however, ignores the significance of this Court's granting of the Preliminary Injunction and the following motion to enforce it.

Additionally, during the summary judgment phase, this Court stated it "ha[d] little doubt that Plaintiffs' constitutional rights were violated" and found that the "analysis in the preliminary injunction ruling continues to show a constitutional violation." (*Id*. at 26-27) (citations omitted). Finally, at trial, Plaintiffs obtained damages of $15,001, combined, on the one of two claims they brought with a verdict against two of the three defendants and an assessment of punitive damages. (ECF No. 221).

The actual relief secured by Plaintiffs was not much different or less comprehensive than the relief Plaintiffs pursued throughout this litigation. Indeed, Defendants urge this Court also to consider a verbal offer of $80,000 and confirmation of additional room for pre-trial settlement talks. (ECF Nos. 250 at 3; 251 at 3). While Defendants were silent in their briefing as to whether this $80,000 offer was inclusive of attorney fees, Plaintiffs contend it was (ECF No. 257 at 1), and where, as here, an offer is silent as to attorney's fees, a court may not assume that the offer is exclusive of fees and add attorney's fees to the sum offered. Instead, courts find that the offer was

silent as to attorney's fees and therefore inclusive of them. *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 449–50 (6th Cir. 2009) (finding the record devoid of evidence the offer was inclusive of fees and concluding the offer was all inclusive due to the lack of evidence and finding plaintiff was entitled to reject the settlement offer based on the number of hours counsel already expended on the litigation decreasing the value to below the amount ultimately recovered).

Given there was considerable success, but it was limited to one distinct claim based on distinct facts and legal theories, this Court finds a 20% reduction to the fee award appropriate. As courts within the Sixth Circuit have consistently recognized, when a plaintiff achieves only partial or limited success, a downward adjustment to the lodestar is warranted to ensure that the fee reflects the results obtained. In *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 421–22 (6th Cir. 2004), for example, the Sixth Circuit affirmed a 35% reduction in fees where the parties received the desired relief but were not successful on all of their claims and "[i]t was not outside the range of reasonable discretion for the district court to characterize the appellants' claims as 'distinctly different' and 'based on different facts and legal theories.'" Similarly, in *Allen v. Allied Plant Maintenance Co. of TN., Inc.,* 881 F.2d 291, 299 (6th Cir.1989), a 35% reduction in attorneys fees was affirmed as the court found that the district court properly accounted for the plaintiff's "limited success" where the original complaint filed included ten defendants, five causes of action, and a prayer for punitive damages. The plaintiff, however, recovered against only two defendants and only on one cause of action and his request for punitive damages was denied.

Moreover, this Court has applied a 20% reduction in light of meaningful, but less than total, success so that the fee accurately reflects the degree of overall relief obtained by the plaintiff in relation to the relief sought. *Ne. Ohio Coal. for the Homeless v. Brunner*, 652 F. Supp. 2d 871, 886 (S.D. Ohio 2009), *modified on reconsideration*, No. C2-06-896, 2009 WL 10663619 (S.D. Ohio

July 30, 2009). This Court noted that, "[g]iven that a number of Plaintiffs' claims have been dismissed for lack of subject matter jurisdiction, comparing the relief Plaintiffs obtained with the overall relief sought, the Court concludes that the full loadstar amount would be an excessive fee in this case. Plaintiffs have achieved substantial results to date, but the results are not so 'excellent' that they are entitled to full recovery." *Id*. In *Scheffler v. Lee*, No. 3:14-CV-373-CRS, 2020 WL 2174449, at *6 (W.D. Ky. May 5, 2020), the court imposed a 30% reduction where the plaintiff succeeded on only 12.5% of his claims and recovered less than 2% of the damages sought. Moreover, in *Franklin v. Beydoun*, No. 14-14801, 2018 WL 11474571, at *11 (E.D. Mich. Dec. 3, 2018), a 25% reduction was warranted given the modest success achieved relative to the size of the fee request and the settlement obtained.

Consistent with this body of case law, a **15% reduction** here ensures that the fee award is reasonable, proportionate, and reflective of the overall outcome of the litigation. To be clear, this Court finds an overall reduction, rather than a reduction of specific hours, appropriate, as the time entries are not so detailed that this Court may identify which claim each time entry pertains to. This 15% reduction is proper so that the fee accurately reflects the degree of overall relief obtained by the plaintiff in relation to the relief sought.

Accordingly, Plaintiffs' attorney's fees award is **$356,405.** This total consists of the lodestar figure ($500/hour x 838.6 hours = $419,300), less the 15% reduction for degree of success (.15 x $419,300 = $62,895)

### c. Costs

Plaintiffs request Former Counsel's costs in the amount of $2,266.55. These costs have been adequately documented in the billing records, and Defendants have not challenged their

reasonableness. This Court therefore grants Plaintiffs' Motion for costs and orders payment of the full amount of **$2,266.55.**

### C. Prejudgment Interest

Plaintiffs move for prejudgment interest pursuant to 42 U.S.C. 1988 and Ohio Rev. Code § 1343.03. (ECF No. 234-1).[2] The Sixth Circuit has held that, in actions brought under federal question jurisdiction, the decision to award prejudgment interest is within the discretion of the trial court. *Young v. Langley*, 840 F.2d 19 (6th Cir. 1988) (citing *EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 579 (6th Cir.1984)). In cases brought under 42 U.S.C. § 1983, district courts in Ohio look to Ohio law when analyzing prejudgment interest demands. *See Molton v. City of Cleveland*, 839 F.2d 240, 250 (6th Cir. 1988) (finding "[p]rejudgment interest is available on a state claim through Ohio Rev. Code § 1343.03(C), and whether it is awarded is addressed to the discretion of the district court."); *see, e.g.*, *Tanner v. Borthwell*, No. 07-14579, 2013 WL 1148411, at *2 (E.D. Mich. Mar. 19, 2013) ("The Sixth Circuit Court of Appeals has held that the decision to award prejudgment interest in Section 1983 cases is within the discretion of the trial court."); *Campbell v. Gause*, No. 10-11371, 2019 WL 1986756, at *2 (E.D. Mich. May 6, 2019) (same); *Ortiz v. Bright*, 2006 WL 1133296 (S.D. Ohio Apr. 26, 2006) (same); *Adams v. Baker*, No. 1:16-CV-335, 2020 WL 406946, at *4 (E.D. Tenn. Jan. 24, 2020) (same); *Pirolozzi v. Stanbro*, 2009 WL 2382953 (N.D. Ohio July 31, 2009); *Gray v. Barnett*, No. 2:20-CV-02947-SHM-CGC, 2024 WL 4005091, at *1 (W.D. Tenn. May 30, 2024) (same); *Caskey v. Fenton*, No. 2:20-CV-1549, 2024 WL 2832689, at *3 (S.D. Ohio June 4, 2024) (granting motion for prejudgment interest pursuant to Ohio Rev. Code § 1343.03(C)).

---

[2] Plaintiffs also reference S.D. Ohio Civ. Rules 54.1 (taxation of costs), and 54.2 (motions for attorney's fees

Under Ohio law, an award of prejudgment interest must be made if the court finds "that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case." *Clay v. Ford Motor Co*., 215 F.3d 663, 672–73 (6th Cir. 2000) (quoting Ohio Rev.Code Ann. § 1343.03(C)(1)). Ohio law permits prejudgment interest pursuant to Ohio Rev. Code § 1343.03(C), which states in relevant part:

> If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:
>
> . . .
>
> (ii) From the date on which the party to whom the money is to be paid filed the pleading on which the judgment, decree, or order was based to the date on which the judgment, decree, or order was rendered.

Ohio Rev. Code § 1343.03(C).

Ohio courts recognize that this statute requires the following before awarding prejudgment interest: (1) a party seeking interest must petition the court and the motion must be filed after judgment and in no event later than fourteen days after entry of judgment; (2) the trial court must hold a hearing on the motion; (3) the court must find that the party required to pay the judgment failed to make a good faith effort to settle; and (4) the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. *Moskovitz v. Mt. Sinai Med. Ctr.,* 1994-Ohio-324, 69 Ohio St. 3d 638, 658, 635 N.E.2d 331, 347 (citing R.C. 1343.03(C); *Cotterman v. Cleveland Elec. Illum. Co.* (1987), 34 Ohio St.3d 48, 517 N.E.2d 536); s*ee also Patrick v. Mercy Health Youngstown LLC*, 2024-Ohio-6132, ¶ 58, 260 N.E.3d 675, 686

42

("If a party meets these four requirements, the court must award prejudgment interest since the statute uses the word 'shall.'").

### 1. Timeliness

In this case, judgment was entered on December 6, 2024 (ECF No. 221), and Plaintiffs filed their motion for prejudgment interest on January 3, 2025 (ECF Nos. 233; 234), beyond the 14-day deadline required under Ohio law. *See Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d at 658, 635 N.E.2d at 347; *Lloyd v. Greater Cleveland Reg'l Transit Auth.*, No. 1:18-CV-01557-PAB, 2022 WL 1186699, at *10 (N.D. Ohio Apr. 20, 2022) ("To be entitled under Ohio law to an award of prejudgment interest, the prevailing party must petition the court within 14 days of entry of judgment for such an award.").

Although Defendants did not object on timeliness grounds, and courts have nonetheless entertained such motions notwithstanding timeliness, Plaintiffs' motion must nonetheless be denied because they have not met their burden under § 1343.03(C) for the reasons further discussed below.

### 2. Hearing

Additionally, § 1343.03(C)(1) requires the Court to make a lack-of-good-faith-effort determination at a hearing before prejudgment interest can be awarded. Plaintiffs neither requested nor obtained such a hearing pursuant to S.D. Ohio Civ. R. 7.1(b). In fact, Plaintiffs argue that there is no need for an evidentiary hearing in response to Defendants' request for one. (ECF No. 257 at 10). While the statute requires a hearing before prejudgment interest may be granted, it does not require a hearing to deny the motion where the record lacks a showing of bad faith. *Hines*, 2016 WL 2342014, at *9 n.7; *see also Bognar v. Zayre Corp.*, 702 F. Supp. 151, 156 (N.D. Ohio 1988) ("A question, however, remains: whether this statute *mandates* a hearing in *all* cases merely on

the proffering of such a motion, or whether disposition without an evidentiary hearing and oral argument in open court is proper. Although, in certain situations, such an evidentiary hearing may be appropriate or even desirable, to hold that it is a necessary prerequisite to this, or any, Court's ruling would not be judicious.").

Again, given this Court's determination that the record does not establish a lack of good faith effort, this Court does not find that a hearing is required.

### 3. Good Faith Efforts

Under the test articulated in *Stallworth v. City of Cleveland*, 893 F.2d 830, 835 (6th Cir. 1990), a party has not "failed to make a good faith effort to settle" under § 1343.03(C) if it has: (1) fully cooperated in discovery proceedings, (2) rationally evaluated the risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. The determination as to the good faith of the parties' settlement efforts is generally within the trial court's discretion. *Clay v. Ford Motor Co.*, 215 F.3d 663, 672–73 (6th Cir. 2000) (citing *Stallworth,* 893 F.2d at 836). The moving party has the burden of proving that it made a good faith effort to settle and that the other party failed to make a good faith effort to settle. *Id.* (citing *Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 635 N.E.2d 331, 348 (1994)).

Here, Plaintiffs have not sustained their burden of proving "that it made a good faith effort to settle and that the other party failed to make a good faith effort to settle." *Clay,* 215 F.3d at 672-73. They argue that Defendants failed to cooperate in discovery proceedings, but identify only a few alleged deficiencies: Defendants' denial of a bank receipt in interrogatory responses; their initial denial of a coin collection's existence; and failure to produce certain photographs of the property, which Plaintiffs ultimately located in a newspaper archive. (ECF No. 234-1 at 4).

Plaintiffs also claim Defendants failed to produce a bank receipt despite referencing it during a deposition. These isolated instances, however, fall short of demonstrating a lack of good faith in the context of a five-year litigation.

Nor have Plaintiffs shown that Defendants failed to evaluate rationally their risks or potential liability. Rather, Defendants prevailed on Plaintiffs' Fourth Amendment claim at the summary judgment stage, and this Court acknowledged at the time that significant legal questions remained regarding Defendants' liability and the remedies available. (ECF No. 133 at 36). Moreover, a trial could have resulted in only nominal damages, a result that would weigh against a substantial fee award under 42 U.S.C. § 1988. See *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 555 (6th Cir. 2008) ("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all."). In such a posture, proceeding to trial was not unreasonable. Defendants rationally evaluated the risks and potential for liability.

Plaintiffs argue that Defendants delayed proceedings by failing to comply with a preliminary injunction order and by "refusing to turn the currency over to Mr. Farmer without written authorization from his clients and then falsely accused him of forging their signatures after he did obtain them." (ECF No. 234-1 at 4). The evidence provided, however, does not establish any lack of good faith by dilatory acts. Indeed, this Court held a show cause hearing to address alleged delays in complying with the preliminary injunction order and found that Defendants had shown adequate cause for any delays and did not hold them in contempt. (ECF No. 58 at 1).

With respect to settlement conduct, Plaintiffs concede that Defendants participated in a mediation conference and made offers to resolve the case. Notably, Defendants extended an Offer of Judgment on December 13, 2022, in the amount of $30,000, inclusive of damages, costs, and fees. (ECF No. 234-1 at 3). Plaintiffs countered with a $125,000 all-inclusive settlement offer or,

alternatively, $45,000 in damages with fees to be determined by this Court. (*Id.*). While Defendants rejected that counteroffer, they later engaged in a Court-hosted settlement conference on December 19, 2023, during which parties could not reach an agreement.[3]

Plaintiffs point to no further demands following that conference and provide no evidence that they pursued settlement negotiations as the trial date approached. They emphasize their contention that Defendants failed to attempt to settle throughout the case but nonetheless forget their burden: they must prove that they also made a good faith effort to settle. *Clay v. Ford Motor Co.*, 215 F.3d at 672–73. Plaintiffs argue Defendants "rebuffed all of Plaintiffs' earlier attempts to settle" but only discuss two offers. One offer was from December 3, 2020, when Mr. Farmer asked Defendants' counsel "Are your clients willing to make an offer to settle the entire matter now?" Counsel did not provide an offer. (ECF No. 257 at 2). The other was the counteroffer in December 2022. (ECF Nos. 257 at 2; 234-3). Nonetheless, this Court is aware of the mediation and court-held settlement conference where both parties made offers. While Defendants effectively rejected those demands, there is no evidence suggesting they were unwilling to negotiate thereafter or were not acting in good faith.

In contrast, Defendants attempted to engage in further negotiations as the trial approached. On September 25 and October 30, 2024, Plaintiffs' trial counsel acknowledged the need to speak with their clients about formulating a demand. (ECF No. 250-5 at 16, 13). On November 11, 2024, Defendants requested an update on a demand and expressed being open to discussing resolution. (ECF No. 250-4 at 4). On November 15, 2025, Plaintiffs finally responded, explaining they did not want to make a demand but was "willing to consider any offer should Defendants wish to make

---

[3] Before the settlement conference, parties submitted settlement demands and position statements to this Court. Based on the letters, Plaintiffs demanded $150,000, not including attorney's fees and Defendants offered $30,000, inclusive of attorney's fees.

one." (*Id*. at 3 Defendants responded on November 22, confirming their prior $30,000 offer and inviting a counter. They then made two subsequent offers—one for $40,000, followed by an informal offer of $80,000. (*Id*. at 1). Plaintiffs did not respond to either. This is distinguishable from the case Plaintiffs rely upon, *Caskey*, 2024 WL 2832689, at *5, in which this Court awarded prejudgment interest after finding that a defendant's non-negotiable $20,000 offer was unreasonable in light of attorney's fees that already exceeded that amount. Unlike in *Caskey*, Defendants here made offers, indicated being willing to negotiate, but Plaintiffs declined to engage in any further negotiations.

Plaintiffs also cite a lack of communication from Defendants between the December 2023 settlement conference and the scheduled February 2024 trial. But this overlooks the fact that, during this period, this Court granted multiple motions for continuance and stays based on Plaintiffs' former counsel's serious health issues. (ECF Nos. 167, 170, 174). The Court declines to treat the Defendants' limited outreach during that time as indicative of any lack of good faith.

In light of the full procedural history, this Court concludes that Defendants acted reasonably and in good faith in their efforts to settle this matter. Even though Defendants did not accept Plaintiffs' counteroffers or initiate further proposals, Plaintiffs also did not engage much in settlement discussion. As such, Plaintiffs did not meet their burden. Plaintiffs'' motion for prejudgment interest is therefore denied.

### D. Sanctions

Plaintiffs also request that this Court exercise its inherent authority to impose sanctions against Defendants. (ECF No. 236). According to Plaintiffs, such sanctions are warranted due to the impact of misrepresentations and false sworn statements made by Defendants, which have influenced the decisions rendered in this case and the verdict returned by the jury. (*Id*. at 1–2).

Separate from the authority to impose sanctions under the Federal Rules of Civil Procedure, courts have the inherent power to sanction a party that "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the conduct was "tantamount to bad faith." *Metz v. Unizan Bank,* 655 F.3d 485, 489 (6th Cir.2011); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (finding a court may exercise its inherent authority to impose sanctions only when it finds bad faith or conduct tantamount to bad faith).

Here, Plaintiffs' allegations arise from their recent discovery of a 2017 subpoena issued to PNC Bank, found among previously produced discovery materials. (ECF Nos. 236 at 2-3; 236-1 at 162). Plaintiffs argue that this subpoena reveals that Defendant Taczak provided perjured testimony and affidavits regarding the timeline of her investigation, specifically as to when it began and concluded, and whether she or the Chillicothe Police Department maintained control over the relevant property during the period in which the Ross County Prosecutor's Office possessed the case file. (*Id*. at 2). Plaintiffs further contend that Defendant Washburn submitted a false Declaration in which he claimed that the Chillicothe Police Department does not exercise control over evidence once the Prosecutor's Office has received the case file and initiates grand jury proceedings. (*Id*. at 1). Plaintiffs also assert that Defendants failed to inform this Court of the true reason for the delay in initiating forfeiture proceedings, as Defendants had the relevant bank records and Plaintiffs' 2014–2016 tax returns by January 2018. (ECF No. 236 at 4).

Plaintiffs conclude that these alleged misrepresentations caused this Court to accept a false timeline regarding the submission of the case file and to mistakenly believe that Defendants did not control Plaintiffs' property during that period. (ECF No. 236 at 15). As a result, Plaintiffs claim that Defendants have vexatiously delayed the proceedings and obstructed the fair resolution of this matter through the submission of perjured testimony and false affidavits. (*Id*.).

The subpoena forming the basis of Plaintiffs' motion, however, was produced during the ordinary course of discovery and has been in Plaintiffs' possession. (ECF Nos. 236 at 2; 249 at 5). Provided this document brought to question the veracity of Defendants' statements, Plaintiffs had the opportunity to further question Defendants. Moreover, the content of the subpoena does not clearly contradict the testimony as Plaintiffs suggest. The subpoena itself merely reflects a request for financial information. (ECF No. 236-1 at 162). It does not, on its face, establish that Defendant Taczak had already received the requested materials, that her investigation concluded, or that a particular party exercised definitive control over the property in question.

As such, this Court does not find that the subpoena shows bad faith or demonstrates conduct tantamount to bad faith.

### III. CONCLUSION

For the reasons discussed above, Motion for Judgment NOV or alternatively, to Alter or Amend the Judgment, or alternatively for a new trial (ECF No. 235) is **DENIED**.

Plaintiffs' Motion for Prejudgment Interest (ECF Nos. 233; 234) and Motion for Sanctions (ECF No. 236) are **DENIED**. Plaintiffs' Motion for Attorney's Fees (ECF No. 232) is **GRANTED in part and DENIED in part**. Defendants are hereby **ORDERED** to pay Plaintiffs' attorney's fees of $**356,405** and costs of **$2,266.55**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 26, 2025**

49